# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>MAININI TILE COMPANY, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 05-1051<br>Judge: Emmet G. Sullivan |

## DECLARATION OF DAVID F. STUPAR IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

Pursuant to 28 U.S.C. § 1746, I, DAVID F. STUPAR, hereby declare as follows:

1. I am the Executive Director of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund") and am also an authorized representative to effect collections on behalf of the Bricklayers & Allied Craftworkers International Health Fund ("IHF"), the International Masonry Institute ("IMI") and the Bricklayers and Allied Craftworkers International Union ("BAC") as specified in the General Collection Procedures and Special Collection Procedures for IHF of the Central Collection Unit ("CCU") of the Bricklayers and Allied Craftworkers ("Collection Procedures" or "Procedures") (attached at Tabs 1 and 2). I have personal knowledge of the facts stated herein and, if called to testify as a witness, I could and would competently testify as set forth below.

2.  The IPF is a multiemployer employee benefit plan subject to ERISA. The IPF is governed by an equal number of employer-appointed and union-appointed Trustees, pursuant to the Taft-Hartley Act. Benefits under the plan are funded by contributions from participating employers.

3.  The Fund provides pension and other benefits to employees who work in the construction industry under contracts negotiated between Bricklayer local unions and employers. Pursuant to these contracts, the employers are obligated to make contributions to the Fund in order to fund the benefits provided to the beneficiaries. The Trustees of the Fund have a fiduciary duty under ERISA to collect delinquent employer contributions, and the Trustees can be held personally liable for their failure to do so. 29 U.S.C. §§ 1104, 1109, 1132(g)(2). The Fund is administered in the District of Columbia.

4.  The Trustees adopted the CCU Collection Procedures governing the collection of employer contributions and reports.

5.  Under these Procedures, contributions and reports are due on or before the 15th day of the month ("Due Date") following the month in which work is performed. Once contributions are delinquent, the Procedures authorize the assessment of interest at 15 percent per annum and an additional amount, the greater of an additional computation of interest at the rate of 15 percent per annum, or liquidated damages at the rate of 20 percent.

6.  I am personally familiar with the account of Mainini Tile Company, Inc. ("Mainini Tile" or "Defendant").

7. Mainini Tile, acting through its authorized agent or officer, signed a collective bargaining agreement ("Agreement") with the International Union of Bricklayers and Allied Craftworkers Local No. 18 Missouri ("Local 18 MO") which obligated Mainini Tile to submit monthly reports and payments to the IPF, IHF, IMI, and BAC on behalf of its covered employees pursuant to the Collection Procedures.

8. Mainini Tile has performed work in Local 18 MO covered by the Agreement.

9. Under the Collection Procedures and Supreme Court precedent, Plaintiffs are entitled to conduct audits on the books and records of Defendant to determine whether contributions have been made in compliance with Defendant's obligations.

10. An examination of Defendant's books and records ("audit") performed by the independent accounting firm of Calibre CPA Group PLLC, covering the time period January 2001 through December 2003, revealed that Defendant failed to properly submit required reports and contributions for work performed during this time period.

11. As determined by the audit, Mainini Tile has failed to pay the IPF, IHF, and IMI $959.92 in contributions due for work performed in Local 18 MO during the months of January 2001 through December 2003. As provided for in ERISA Section 502(g)(2)(A), Mainini Tile thus owes the IPF, IHF, and IMI $959.92 in delinquent contributions for work performed in Local 18 MO. As further provided for in ERISA Section 502(g)(2)(B) and under the terms of the Collection Procedures, interest on such delinquent IPF, IHF, and IMI contributions in the amount of $497.28 is owed by Mainini Tile Moreover, pursuant to ERISA Section 502(g)(2)(C) and the Collection Procedures,

an additional computation of interest in the amount of $497.28 has been assessed on such delinquent contributions due the IPF, IHF, and IMI.

12. As determined by the audit, Mainini Tile has failed to pay the BAC $58.76 in dues checkoff due for work performed in Local 18 MO during the months of January 2001 through December 2003. As provided for under the terms of the Collection Procedures, Mainini Tile thus owes the BAC $58.76 in dues checkoff for work performed in Local 18 MO. As further provided for under the terms of the Collection Procedures, interest in the amount of $30.71 is owed the BAC by Mainini Tile

13. As of the date of this Declaration, despite due demand thereof, Defendant has failed to pay the contributions due the IPF, IHF, and IMI and dues checkoff due the BAC for work performed in Local 18 MO during the months specified above.

14. Defendant thus owes the IPF, IHF, and IMI $959.92 in delinquent contributions for work performed in Local 18 MO during the months specified above (ERISA Section 502(g)(2)(A)).

15. As provided for in ERISA Section 502(g)(2)(B) and the Collection Procedures, Defendant further owes the IPF, IHF, and IMI $497.28 in interest on delinquent contributions.

16. As additionally provided for in ERISA Section 502(g)(2)(C) and the Collection Procedures, Defendant owes the IPF, IHF, and IMI $497.28 in an additional computation of interest on delinquent contributions.

17. As determined by the audit, Mainini Tile owes the BAC $58.76 in delinquent dues checkoff for the months specified above (Collection Procedures).

18. As provided for in the Collection Procedures, Defendant further owes the BAC $30.71 in interest on unpaid dues checkoff.

19. The court fee of $250.00 for the cost of filing this action is recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures.

20. Costs relating to service of process in the amount of $146.85 are recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures.

21. The costs of performing the payroll audit in the amount of $4,367.48 are recoverable under ERISA Section 502(g)(2)(D), the terms of the Collection Procedures and the Agreements signed with Local 18 MO.

22. Attorney's fees of $1,849.50, which are recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures, have been incurred by Plaintiffs in their attempt to collect on a judgment against Defendant for the amount of unpaid contributions, dues checkoff, interest, an additional computation of interest, court costs, costs relating to service of process, audit costs and attorney's fees. A detailed accounting of the attorney's fees incurred in this action is presented in the Declaration of counsel to the IPF which accompanies this Motion For Default Judgment.

23. The total amount owed the IPF, IHF, IMI, and BAC by Defendant for delinquent contributions and unpaid dues checkoff for the months set forth above; interest on contributions and dues checkoff owed the IPF, IHF, IMI and BAC, and an

additional computation of interest owed the IPF, IHF, and IMI as specified in ERISA; court filing fee; service of process costs; audit costs; and attorney's fees is $8,657.78.

I declare under penalty of perjury that the foregoing is true and correct.

Date: November 4, 2005

David F. Stupar
Executive Director

**EXHIBIT 1**

5/13/02

# GENERAL COLLECTION PROCEDURES OF
# THE CENTRAL COLLECTION UNIT OF
# THE BRICKLAYERS AND ALLIED CRAFTWORKERS

These General Collection Procedures govern the collection of delinquencies by the Central Collection Unit of the Bricklayers and Allied Craftworkers ("CCU") on behalf of the following participating entities: Bricklayers and Allied Craftworkers International Union ("BAC"); Bricklayers and Trowel Trades International Pension Fund ("IPF"); Bricklayers and Allied Craftworkers International Health Fund ("IHF"); International Masonry Institute ("IMI"); Bricklayers and Allied Craftworkers Political Action Committee ("BACPAC"); and Local Officers and Employees Pension Fund ("LOEPF") (collectively "CCU Entities"). IHF and BAC SAVE are covered by Special Collection Procedures. Such Special Collection Procedures shall control when in conflict with these General Procedures.

I.      REPORTS AND PAYMENTS TO CCU ENTITIES

    A.      Due Date

        1.  Contributions and reports to the CCU Entities are due on or before the 15th day of the month following the month for which the contributions are being paid ("Due Date"), unless the collective bargaining agreement imposes a different Due Date.

        2.  Reports of participating employers must be filed each month even if no contributions are due for that month. All participating employers, whether submitting contributions directly or through a local administrator or local union, must use the standard CCU report form.

        3.  Employer reports will be date-stamped on the day received in the CCU Office, or in the case of local administrators or local unions, on the day received by the local. The stamped date will be the controlling date with regard to these Collection Procedures.

        4.  If any controlling date under these Collection Procedures falls on a weekend or legal holiday, the applicable date will be the next working day.

    5.    The IPF is authorized by other CCU Entities to act on their behalf in litigation. All references to "CCU Office" in these Collection Procedures may also refer to "IPF Office," as applicable.

B.    Notice Of Delinquency

    1.    If the CCU Office has not received payment by the last day of the month of the Due Date, the CCU Office will send a Reminder Notice to the employer. If payment has not been received 30 days after the Reminder Notice, a Notice of Delinquency will be sent to the employer.

    2.    The Notice of Delinquency will advise the employer that required contributions were not received by the Due Date and warn that if the contributions are not received within 15 days (60 days following the Due Date), the employer will be considered delinquent ("Delinquent Date") and will be assessed interest at 15% per annum (retroactive to the Due Date) and may be required to pay Liquidated Damages of 20% of the delinquent amount. The Notice of Delinquency will require the employer to notify the CCU Office within five (5) days of the date of notice if the employer believes that the Notice of Delinquency was sent in error.

C.    Notice Of Referral To Counsel

    1.    If the CCU Office has not received payment within 15 days of the Notice of Delinquency, the CCU Office will send to the employer a Notice of Referral to Counsel.

    2.    The Notice of Referral to Counsel will advise the employer that payments were not received by the Delinquent Date and that payments for contributions and interest are due and owing. Unless all sums owed are received by the CCU Office within 10 days following the Notice of Referral to Counsel, liquidated damages up to 20% of the delinquent contributions or statutory interest may be imposed and the matter automatically will be referred to counsel. The Notice of Referral to Counsel also will state that counsel will be instructed to seek all sums recoverable, including contributions, interest, liquidated damages or statutory interest, and all attorneys' fees.

2

II.  COUNSEL

    A.  Procedures

        1.  If CCU has not received the contributions and applicable interest within 10 days of the Notice of Referral to Counsel, the matter automatically will be referred to counsel no later than 15 days from the due date.

        2.  Within 10 days of referral, counsel will send a letter to the employer advising that if payment of contributions, interest and other damages is not received within 10 days, suit will be instituted.

        3.  Suit thereafter will be instituted.

    B.  CCU Policy Following Referral To Counsel

        1.  Following the referral of a matter to counsel, the CCU Office will have no authority to deal with an employer except to discuss computations.

        2.  Counsel shall file suit for all moneys recoverable, including damages that may be recoverable under Section 502(g)(2) of ERISA and also may seek remedies under applicable state law against individual corporate officers and/or shareholders.

        3.  The CCU is authorized to seek legal redress prior to the time that the above procedures are exhausted if, in his sole discretion, the Director concludes that the interests of affected participants require immediate action. If an employer fails to make payment when due, suit may be filed to collect all delinquent contributions, interest and other damages regardless of other exhaustion requirements in these Collection Procedures.

III. AUDITS

Audits will be conducted to insure full compliance with employer obligations under collective bargaining agreements. Every employer can expect to be audited at some time. If a delinquency is discovered as the result of an audit, the employer will be assessed the cost of the audit.

3

A.  Detection Of Delinquent Employers Subject To Audit

   1.  At least once every year, the Executive Directors of the IPF and IHF will send information to participants reflecting contributions received from participating employers. The participants will be encouraged to report missing hours to the CCU.

   2.  The CCU will take steps to insure that delinquencies of participating employers are recovered.

B.  Audits Performed By Third Parties

   1.  The CCU will rely upon audits performed by third parties when CCU determines that they conform to auditing procedures contained in the CCU's Guidelines.

   2.  The CCU periodically will monitor the audits of third parties in order to confirm their reliability.

C.  Audits Performed On Employers Contributing Directly To The CCU

   1.  The CCU will coordinate with third parties who perform audits on employers contributing directly to CCU and will insure that such audits conform to CCU guidelines.

   2.  As to employers contributing directly to the CCU who are not subject to audits by third parties, CCU will perform two types of payroll audits on directly contributing employers in order to insure compliance.

      a.  <u>Random Audits</u> -- Audits may be conducted on any participating employer at any time, on a random basis, at the direction of the Director.

      b.  <u>Problem Audits</u> -- When the Director receives information from a local union, covered member or other source indicating that an employer may be delinquent, the Director may order that an audit be conducted.

D.  Notification Of Audit Delinquency

   1.  The CCU Office will send a Notice of Delinquency to audited employers found to be delinquent stating the amount of additional contributions owing as a result of the audit.

   2.  Any unsatisfied audit deficiency will be treated according to the CCU's Collection Procedures following the intervention of counsel.

4

      E.    Form of Audits

          1.    All audits will be carried out under procedures formulated by the Director.

          2.    All employer books and records set forth in the audit procedures will be made available to the CCU auditor.

IV.    BONDS

The Director may, in his sole discretion, require an employer to post a cash or surety bond in an amount and under terms necessary to protect the interests of the applicable CCU Entity.

5

**EXHIBIT 2**

1/27/05

# SPECIAL COLLECTION PROCEDURES FOR IHF

Due to substantial employer delinquencies which threaten the financial health of the Bricklayers & Allied Craftworkers International Health Fund ("IHF"), the following Collection Procedures shall apply to the IHF. Such Special Collection Procedures shall control when in conflict with the General Collection Procedures applicable to all CCU entities.

I.     IHF REPORTS AND PAYMENTS TO CCU

    A.     Due Date

        1.     Contributions and reports for IHF are due on or before the 15th day of the month following the month for which the contributions are being paid ("Due Date"), unless the collective bargaining agreement imposes a different Due Date.

        2.     Reports of participating employers must be filed each month even if no contributions are due for that month. All participating employers, whether submitting contributions directly or through a local administrator or local union, must use the standard CCU report form.

        3.     The date the Employer's check is deposited into the bank, or in the case of local administrators or local unions, on the day received by the local,. will be considered the controlling date in calculating time under these Collection Procedures.

        4.     If any controlling date under these Collection Procedures falls on a weekend or legal holiday, the applicable date will be the next working day.

        5.     The IPF is authorized by IHF to act on its behalf in litigation. All references to "CCU Office" in these Collection Procedures may also refer to "IPF Office," as applicable.

    B.     Notice Of Delinquency

        1.     If the CCU Office has not received payment from an IHF employer by the Due Date, a Notice of Delinquency will be sent to the employer.

  2. The Notice of Delinquency will advise the employer that required contributions were not received by the Due Date and warn that if the contributions are not received within 15 days **of the Due Date**, the employer will be considered delinquent ("Delinquent Date"). On the Delinquent Date a late fee assessment of 20% of delinquent contributions representing liquidated damages will be imposed and the CCU will have the right to assess interest at 15% <u>per annum</u> (retroactive to the Due Date).. The Notice of Delinquency will require the employer to notify the CCU Office within five (5) days of the date of notice if the employer believes that the Notice of Delinquency was sent in error.

 C. Notice Of Referral To Counsel

  1. If the CCU Office has not received payment within 15 days of the Due Date, the CCU Office will send to the employer a Notice of Referral to Counsel.

  2. The Notice of Referral to Counsel will advise the employer that payments were not received by the Delinquent Date and the matter automatically will be referred to counsel **if payment is not received within 10 days**. The Notice of Referral to Counsel also will state that counsel will be instructed to seek all sums recoverable, including contributions, interest, liquidated damages or statutory interest, and all attorneys' fees.

  3. On the date the Notice of Referral to Counsel is transmitted, the CCU Office will notify the applicable local union that the employer is delinquent. The CCU Office will seek the assistance of the local union in the collection of the delinquency, including the exercise by the local union of all rights under the collective bargaining agreement.

 D. Referral to Counsel

  If the delinquent contributions, interest and liquidated damages are not paid within 10 days of the Notice of Referral to Counsel, the matter will be referred to counsel automatically.

II. COUNSEL

 A. Procedures

  1. Within 5 days of referral, counsel will send a letter to the employer advising that if payment of contributions, interest and other damages is not received within 5 days, suit will be instituted.

  2. Suit thereafter will be instituted.

2

B.  CCU Policy Following Referral To Counsel

1.  Following the referral of a matter to counsel, the CCU Office will have no authority to deal with an employer except to discuss computations.

2.  Counsel shall file suit for all moneys recoverable, including damages that may be recoverable under Section 502(g)(2) of ERISA and also may seek remedies under applicable state law.

III. DELINQUENT EMPLOYERS

A.  Contributions Applied to Oldest Delinquency

1.  When an employer fails to remit reports and required contributions to the IHF when due according to the terms of these IHF Special Collection Procedures, 15 days after the contributions are due, the employer shall be considered a Delinquent Employer.

2.  These rules will reaffirm the practice that contributions of a Delinquent Employer will be applied to satisfy the oldest delinquency of that employer, subject to the discretion of the Director.

3.  In the event that the contributions of a Delinquent Employer are applied to that employer's oldest delinquency, those contributions will not result in hours toward eligibility for the Delinquent Employer's current employees.

B.  Suspension, Termination and Seeking Legal Redress

1.  The Director may, in his sole discretion, suspend or terminate a Delinquent Employer's participation in the IHF. Such suspension or termination will result in the loss of benefits to the Delinquent Employer's employees and/or the return of contributions to the employer, subject to the discretion of the Director.

2.  The CCU is authorized to seek legal redress at any time prior to the time that the above procedures are exhausted if, in his sole discretion, the Director concludes that the interests of affected participants require immediate action. If an employer fails to make payment when due, suit may be filed to collect all delinquent contributions, interest and other damages regardless of other exhaustion requirements in these Collection Procedures.

3. Whenever those Special Collection Procedures are utilized for IHF delinquencies, the Director, in his sole discretion, may apply these procedures, including time requirements for delinquencies, to delinquencies of other CCU entities that arise at or around the same time.

IV. NOTIFICATION TO EMPLOYEES

A. Notice of Delinquency

1. At the time of referral of a delinquency to counsel pursuant to these procedures, the IHF shall notify the affected employees of the Delinquent Employer that they may lose coverage due to their employer's delinquency

2. In the event that the Delinquent Employer is making contributions on behalf of its current employees, but those monies are being applied to the employer's past delinquencies, the current employees may be advised that contributions are not resulting in hours of eligibility due to the employer's delinquency.

B. Notice of Loss of Coverage

1. If an employee of a Delinquent Employer is about to lose benefits due to the employer's delinquency, the IHF shall provide fourteen (14) days notice to the employee of such impending loss of benefits, subject to the discretion of the Director.

V. BONDS

A. Every IHF employer is required to post a cash or surety bond in an amount necessary to protect the interests of the IHF.

B. All bonds will be in a form and amount set in the sole discretion of the Director.

VI. NON-JOB SITE CONTRIBUTIONS

A. Non-Job Site Contributions

1. As described more fully in the BAC IHF Summary Plan Description, "non-job site Employees" are eligible for coverage if they are employees of an employer that contributes to the IHF. "Non-job site employees" are employees who are not in a job category covered by their employer's Collective Bargaining Agreement. Coverage for non-job site employees is provided as a convenience to the employer.

4

   2. Contributions for covered non-job site employees are due in accordance with the BAC IHF Summary Plan Description and these special Collection Procedures. Contributions for covered non-job site employees must be sent to the CCU Office (<u>not</u> to the Fund office) with the current report form. If the CCU Office receives payments for non-job site employees without the current report form, or if the payments are sent to the Fund office, those payments will be returned, possibly resulting in delay, suspension or termination of coverage.

 B. Non-Job Site Delinquency

   1. If an employer fails to make contributions when due for all its covered employees (both regular and non-job site employees), the IHF may, at its option, 1) reject any contributions tendered for non-job site employees, 2) treat the employer as delinquent as to <u>all</u> required contributions, and/or 3) suspend or terminate the employer's participation in the IHF.

   2. The termination of an employee's eligibility for coverage by the IHF resulting from the employer's delinquency does <u>not</u> constitute a Qualifying Event under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). The IHF is not required to and will not allow employees (whether regular or non-job site) whose coverage has terminated due to their employer's delinquency to continue coverage by paying their own premiums, as COBRA requires when a Qualifying Event occurs.

VII. SAMPLE IHF DELINQUENCY REFERRAL

| | |
|---|---|
| January 15 | Due date for work performed in December; Notice of Delinquency issued. |
| February 1 | Delinquent Date, Notice of Referral to Counsel and Notice to Local Union of delinquency: employer considered delinquent (20% late fee imposed. Notice of Referral to counsel advises employer that it has 10 days to pay to avoid referral to counsel.) |
| February 11 | Case automatically referred to counsel. Notice to Employees of delinquency. |
| February 16 | Demand letter from counsel requiring 5-day response. |
| February 21 | Suit filed. |