# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, DOMINIC SPANO, KENNETH LAMBERT, JAMES BOLAND, GERRY O'MALLEY, JOSEPH BRAMLETT, PAUL SONGER, CHARLES VELARDO, EUGENE GEORGE, MATTHEW AQUILINE, GREGORY HESS, VINCENT DELAZZERO, and MICHAEL SCHMERBECK, as Trustees of, and on behalf of, the BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND,<br>  1776 Eye Street, NW, Fifth Floor<br>  Washington, DC  20006<br>  (202) 783-3788, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| BRICKLAYERS AND ALLIED CRAFT WORKERS INTERNATIONAL HEALTH FUND<br>  1776 Eye Street, NW, Fifth Floor<br>  Washington, DC  20006<br>  (202) 783-3788, | ) ) ) ) ) ) |
| INTERNATIONAL MASONRY INSTITUTE<br>  1776 Eye Street, NW, Fifth Floor<br>  Washington, DC  20006<br>  (202) 783-3788, | ) ) ) ) ) ) ) |
|        and | ) ) |
| INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS<br>  1776 Eye Street, NW, Fifth Floor<br>  Washington, DC  20006<br>  (202) 783-3788, | ) ) ) ) ) ) |
|                Plaintiffs, | ) |
|           v. | ) |
| MAININI TILE COMPANY, INC.<br>  16624 Chesterfield Airport Road<br>  St. Louis, MO  63017<br>  (636) 532-1113, | ) ) ) ) ) ) |
|                Defendant. | ) ) ) ) |

CASE NUMBER  1:05CV01051

JUDGE: Emmet G. Sullivan

DECK TYPE: Labor/ERISA (non-employment)

DATE STAMP: 05/25/2005

## COMPLAINT

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP, complaining of the Defendants, allege as follows:

## CAUSE OF ACTION

### Jurisdiction and Venue

1.     This is an action brought by the fiduciaries of the Bricklayers and Trowel Trades International Pension Fund ("IPF"), the fiduciaries of the Bricklayers and Allied Craftworkers International Health Fund ("IHF"), and the fiduciaries of the International Masonry Institute ("IMI") to enforce the terms of the Plan and Trust Agreements adopted by the IPF, IHF and IMI and the provisions of Section 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1145. This action arises under the laws of the United States, specifically Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).   Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court. As to the claims brought by the International Union of Bricklayers and Allied Craftworkers ("BAC"), jurisdiction is conferred under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185.

2.     The IPF, IHF and IMI are administered in the District of Columbia. Venue for the claims asserted by the IPF, IHF and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2)  Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

DSMDB.1931137.1

3.  BAC maintains its principle office in the District of Columbia.  Venue for the claims asserted by the BAC is therefore conferred on this Court pursuant to 29 U.S.C. § 185(c)(1).

### Parties

4.  Plaintiffs, John Flynn, Dominic Spano, Kenneth Lambert, James Boland, Gerry O'Malley, Joseph Bramlett, Paul Songer, Charles Velardo, Eugene George, Matthew Aquiline, Gregory Hess, Vincent DeLazzero, and Michael Schmerbeck, are Trustees of, and sue on behalf of, the IPF.  The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).  Plaintiffs bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

5.  The IPF is also authorized to effect collections on behalf of the IHF, IMI and BAC, pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

6.  Plaintiff, IHF, is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

7.  Plaintiff, IMI, is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

3

8. Plaintiff, BAC, an unincorporated association, is a labor organization within the meaning of 29 U.S.C. § 152(5) and is entitled to bring suit under 29 U.S.C. § 185.

9. Defendant, Mainini Tile Company, Inc., is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of Missouri.

10. Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

## Violation Charged

11. Defendant, acting through its authorized agent or officer, executed collective bargaining agreements with the Union. The collective bargaining agreements are annexed hereto as Exhibit A and Exhibit B and referred to hereinafter collectively as "the Agreements."

12. Pursuant to the Agreements, Defendant agreed to make certain payments to the IPF, IHF, IMI, and BAC on behalf of covered employees of Defendant. Having submitted some contributions, Defendant has demonstrated an awareness of its obligation to make those payments.

13. Upon information and belief, Defendant has not reported correctly and has failed to properly make contributions for employees covered by the Agreements.

4

14.     Plaintiffs seek to conduct an audit of Defendant's books and records in order to determine amounts which may be owed for work covered by the Agreements.

15.     Despite several requests by the IPF, or a representative of the IPF, for access to Defendant's books and records, so that the IPF auditor can determine whether contributions have been made in compliance with Defendant's obligations, Defendant has failed to grant the IPF auditor such access to its books and records.

16.     Under the terms of the Agreements, the terms of the Plan and Trust Agreement adopted by the IPF Board of Trustees, the terms of the Plan and Trust Agreement adopted by the IHF Board of Trustees, the terms of the Plan and Trust Agreement adopted by the IMI Board of Trustees, the CCU Procedures and Supreme Court precedent, Plaintiffs are entitled to conduct audits on the books and records of Defendant to determine whether contributions have been made in compliance with Defendant's obligations.

17.     To date the delinquent contributions, interest and liquidated damages believed due and owing have not been paid.

18.     Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1). Plaintiffs have been, and are, incurring attorney's fees as a direct result of Defendant's refusal to allow an audit in accordance with the terms and conditions of the Agreements.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

DSMDB.1931137.1

1.  For all amounts owed by the Defendant to the IPF, IHF, IMI, and BAC pursuant to a payroll audit of the Defendant, including:

    a.  for all unpaid contributions determined due and owing to the IPF, IHF and IMI pursuant to a payroll audit of Defendant (ERISA Section 502(g)(2)(A));

    b.  for interest assessed on such delinquent contributions uncovered by the payroll audit of the Defendant, at the rate of 15 percent per annum. (ERISA Section 502(g)(2)(B));

    c.  for the greater of liquidated damages, calculated at the rate of 20 percent, or an additional computation of interest assessed on such delinquent contributions. (ERISA Section 502(g)(2)(C)(i);(ii));

    d.  for all dues checkoff determined owing to the BAC pursuant to a payroll audit of Defendant (29 U.S.C. §185);

    e.  for interest on such delinquent dues checkoff at the rate of 15 percent per annum;

    f.  for audit costs in an undetermined amount to be incurred during the audit of Defendant (ERISA Section 502(g)(2)(D));

    g.  for the costs of filing this action in the amount of $250.00 (ERISA Section 502(g)(2)(D));

2.  For an order directing Defendant to turn over to Plaintiffs' auditor its books and records from June 1, 2001 through the present and ongoing, including, but not limited to, payroll records and general ledger(s).  Plaintiffs will suffer irreparable

DSMDB.1931137.1

injury in the absence of such injunctive relief and there is no adequate remedy at law. Plaintiffs seek an order granting it:

      a.  Preliminary injunctive relief; and

      b.  Permanent injunctive relief.

    3.  In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D));

    4.  That the Defendant be directed to comply with their obligations to report and to contribute to the IPF, IHF, IMI and BAC all additional reports and contributions due and owing, and to pay the costs and disbursements of this action; and

    5.  Such other relief as this Court deems appropriate, including judgment for any contributions and/or interest thereon that may accrue subsequent to the filing of this complaint and any resulting statutory damages thereon under ERISA.

Dated: May 25, 2005

By: _____

Ira R. Mitzner, DC Bar No. 184564
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY LLP
2101 L Street, N.W.
Washington, D.C. 20037-1526
(202) 828-2234

Attorneys for Plaintiffs

DSMDB.1931137.1

EXHIBIT  A

RECEIVED MAY 2 5 2001        mo0128 ✓

BRICKLAYERS AND ALLIED CRAFTWORKERS

INTERNATIONAL UNION OF AMERICA

TILE AND MARBLE SETTERS AND FINISHERS
LOCAL UNION #18 OF MISSOURI

AGREEMENT WITH

TILE AND MARBLE CONTRACTORS ASSOCIATION

ST. LOUIS AND VICINITY

MAY 1, 2001 through APRIL 30, 2004

M00128

1

## TABLE OF CONTENTS

Table of Contents ............................................................1-2
Duration ...............................................................................3
Union Recognition ..............................................................3
Management Recognition ...................................................3
Union Security ....................................................................4
Scope of Agreement ...........................................................4
Setters Territorial Jurisdiction ..........................................4
Finishers Territorial Jurisdiction ......................................4
Tile Setter Work .................................................................5
Marble Setter Work ............................................................6
Teamwork ...........................................................................6
Regular Work Hours ..........................................................6
Overtime .............................................................................6
Saturday Make-up Day .......................................................6
Occupied Non-Residential .................................................7
Holidays ..............................................................................7
Show-up Time .....................................................................7
Mileage Reimbursement .....................................................8
Out-of-Town Meal Allowance ...........................................8
Out-of-Town Motel Allowance ..........................................8
Out-of-Town Travel Allowance .........................................9
Parking ................................................................................9
Hiring Preference ...............................................................9
Sub-Contracting ..................................................................9
Agreement to Deduct .........................................................10
Authorization to Deduct .....................................................10
Dues Check-Off ..................................................................10
Working Foreman ...............................................................11
Piece Work ..........................................................................11
Limitation of Work .............................................................11
Orders and Working Instructions .......................................11
Equipment ...........................................................................11
Epoxy Materials ..................................................................12
Maintenance of Equipment.................................................12
Faulty Work ........................................................................12
Personal Appearance ..........................................................12
Maintenance of Skills .........................................................12

MOOERE

2

Drug Testing ...................................................................................13
Determination of Contractor ............................................................13
Surety Bond ......................................................................................13
Unemployment Compensation Insurance .........................................14
Worker's Compensation Insurance ...................................................14
Uniformity of Operation ..................................................................14
Favored Nation Clause .....................................................................14
Arbitration ........................................................................................15
Preservation of Work .......................................................................16
Tile & Marble Setter Wages & Benefits ..........................................17
Tile & Marble Setter Apprentice Program .......................................18
Tile & Marble Finisher Wages & Benefits .......................................18
Grandfather Clause ...........................................................................19
Tile & Marble Finishers Apprentice Program ..................................19
Apprentice Fund ...............................................................................19
Industry Advancement ......................................................................20
International Masonry Institute .........................................................20
Federal Wage Control .......................................................................20
No Discrimination & General Understanding ...................................21
Delinquencies ...................................................................................21
Traveling Contractors .......................................................................22
Out-of-Town Contractors .................................................................22
Validity of Agreement ......................................................................23
Index .................................................................................................24

M00128

3

## AGREEMENT

This Agreement entered into this first day of May, 2001 by and between the TILE & MARBLE CONTRACTORS ASSOCIATION OF GREATER ST. LOUIS on behalf of its member Tile & Marble Contractors of St. Louis and Vicinity, and such other contractors who are signatory hereto and such other contractors who may become signatory hereto (hereinafter referred to as the Employer or Contractor) and the INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, LOCAL #18 OF MISSOURI, AFL-CIO (hereinafter referred to as the Union).

## ARTICLE I

## DURATION - TERMINATION -AMENDMENT

This Agreement shall be effective commencing May 1, 2001 and shall continue in full force to and including April 30, 2004 and shall be automatically continued yearly thereafter unless written notice of decision to negotiate a new Agreement, in whole or in part, is given in writing by either party to the other not later than sixty (60) days nor more than ninety (90) days prior to the expiration date or any anniversary date thereafter. The parties may at any time mutually agree to change or amend any part of this Agreement and such change or amendment shall not affect the continuing nature of this Agreement. Such change or amendment shall not be effective however until reduced to writing and signed by both parties.

## ARTICLE II

## MANAGEMENT - UNION RECOGNITION AND SECURITY

Section 1 - Union Recognition The employer hereby recognizes and acknowledges that the Union is the exclusive representative of all its employees in classification of work falling within the jurisdiction of the Union, as defined in Article III of this Agreement, and in the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers, for the purpose of collective bargaining as provided for in the Labor Management Relations Act of 1947, as amended.

Section 2 - Management Recognition The Union hereby recognizes and acknowledges the Tile & Marble Contractors Association of St. Louis as the representative of Employers and acknowledges that the maintenance of job site discipline is the responsibility of Employers, and that except as herein provided Employers shall have the right to hire, suspend, discipline or fire for just cause, direct the work force and in general operate their business in accordance with their judgment.

M00128

4

Section 3 - <u>Union Security</u> No later than eight (8) days following the effective date of this Agreement, all present employees must, as a condition of continued employment, be or become members of the Union; all employees hired after the effective date of this Agreement shall be or become and remain members of the Union no later than eight (8) days following the first day of their employment in accordance with the provisions of Section 8 of the National Labor Relations Act, as amended. Failure of any employee to comply with the provisions of this subsection shall, upon request of the Union, result in termination of such employees, provided that the Union has given the employee four (4) days notice that his/her obligation to make payment has not been met and that his/her delinquency renders him/her liable to termination under this section. The Employer shall not be obligated to dismiss an employee for non-membership in the Union; (a) if he/she has reasonable grounds for believing that such membership was not available on the same terms and conditions generally applicable to other members; or (b) if he/she has reasonable grounds for believing that such membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

## ARTICLE III

## WORK JURISDICTION

Section 1 - <u>Scope of Agreement</u> This Agreement covers all Tile Layer, Marble Setter, and Tile & Marble Finisher employees of the Employer engaged in the setting, slabbing or installing of all classes of tile or marble, whether for interior or exterior purposes, in any public or private building located anywhere within the territorial jurisdiction of the Union.

Section 2a <u>Tile & Marble Setters Territorial Jurisdiction</u> This jurisdiction shall consist of the following counties in the State of Missouri; Clark, Lewis, Marion, Ralls, Pike, Lincoln, Warren, St.Charles, St.Louis, Franklin, Jefferson, Crawford, and including the city of St.Louis.

Section 2b <u>Tile & Marble Finishers Territorial Jurisdiction</u> This jurisdiction shall consist of the following counties in the State of Missouri: Scotland, Clark, Knox, Lewis, Shelby, Marion, Monroe, Ralls, Audrain, Pike, Callaway, Montgomery, Lincoln, Warren, St.Charles, St.Louis, Osage, Gasconade, Franklin, Jefferson, Maries, Pulaski, Phelps, Crawford, Dent, Washington, St. Francis, St. Genevieve, Perry, Texas, Iron, Madison, Cape Girardeau, Bollinger, Shannon, Reynolds, Wayne, Howell, Oregon, Carter, Ripley, Butler, Stoddard, Scott, Mississippi, New Madrid, Dunklin, Boone and Pemiscot. This includes the City of St. Louis and the following counties in the State of Illinois: Madison, St. Clair, Bond, Fayette, Jefferson, Franklin, Hamilton, Jackson, Saline, Wayne, Williamson, Clinton, Marion, Monroe, Randolph, Perry, Washington, Union, Alexander, Hardin and Gallatin

Section 2c In the event the territorial or trade jurisdiction of the Union shall be extended during the term hereof, this Agreement shall cover such extensions.

M00128

5

Section 3 Tile Setter Work is defined as:
(a) The laying, cutting, or setting of all tile, and tile substitutes, where used for floors, walls, ceilings, walks, promenade roofs, exterior veneers, stair treads, stair risers, facings, hearths, fireplaces and decorative inserts, together with any marble plinths, thresholds or window stools used in connection with any tile work; also to prepare and set all concrete, cement, brickwork or other foundations or material that may be required to properly set and complete such work.

(b) The application of a coat or coats of mortar, prepared to proper tolerance to receive tile on floors, walls and ceilings regardless of whether the mortar coat is wet or dry at the time the tile is applied to it.

(c) The setting of all tile bonded with mortar, where the bed is floated, screeded, slabbed or buttered and where joints are not filled in the same operation.

(d) The setting of all tiles by the adhesion method with organic and/or inorganic thin-bed bonding materials where such bonding material is applied to the backing surface and/or the back of tile units or sheets of tile.

(e) The setting of tile as herein provided shall include the installation of underlayment, backer-board, waterproofing membrane, accessories and the insertion of decorative tile inserts in other materials.

(f) The setting, sealing, caulking, and installation of prefabricated tile systems.

Section 4 "Tile" is herein defined as the following products:
(a) All burned clay products, as used in the Tile Industry either glazed or unglazed.
(b) All composition materials, marble tiles, glass mosaics and all substitute materials for tile made in the tile-like units.
(c) All mixtures in tile-like form of cement, metals, plastics and other materials, that are made for and intended for use as a finished floor and all places where tile is used to form a finished interior or exterior surface for practical use, sanitary finish or decorative purposes.

Section 5 Marble Setter Work is defined as: Including, but not limited to the handling, erection or installation of interior Stone, Marble, Slate, Granite, Quartzite, Limestone, Travertine, Art Marble, Serpentine, Alberence Stone, Blue Stone or other Stone. Meaning as to Stone any foreign or domestic materials as specified and used in building interiors and customarily known as stone in the trade: Carrora, Salonyx, Vitrolite, and similar opaque glass and the laying of all Marble tile, Terrazzo tile, Slate tile, or any other material that may be used as substitutes for any of the aforementioned materials and which are installed in a similar manner. Also any of the aforementioned materials where used on exterior work up to and including two (2) inches of thickness

M00128

6

Section 6 <u>Tile & Marble Finishers Work</u> is defined as:

(a) The handling, at the building site, all sand, cement, tile, marble or stone as defined above and all other materials that may be used and installed by tile layer, or marble mason member of Local #18 MO.

(b) The grouting, cleaning, sealing, and mixing on the job site, and all other work as required in assisting the setter.

Section 7 <u>Teamwork</u> is essential for the improvement of the Tile & Marble Industry. Working together as a team will achieve a high standard of workmanship and quality. All members of Local #18 MO must work together in a harmonious way to combat the non-union and open shop movement.

<u>ARTICLE IV</u>

<u>HOURS OF WORK - OVERTIME AND HOLIDAYS</u>

Section 1 <u>Hours</u> The standard workday shall consist of eight (8) hours of work between the hours of 8:00 am and 4:30 PM with a 30 minute unpaid lunch hour occurring in the middle of the shift. The standard workweek shall consist of five standard workdays commencing on Monday and ending on Friday, inclusive. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.

Section 2 <u>Overtime</u> All time worked before and after the established eight (8) hour work day, Monday through Friday, and all time worked on Saturdays, shall be paid for at the rate of time and one-half (1 1/2) the hourly base wage rate in effect. All time worked on Sundays and on the holidays specified in Section 5 of Article IV shall be paid for at the rate of double the hourly base wage rate in effect.

Section 3 <u>Saturday Make-Up Day</u> all work done on Saturday will be done at time and one-half (1 1/2) unless the employer and employee mutually agree that Saturday shall be used as a make-up day. The employee shall not be disciplined or discriminated against for failing to agree to use Saturday as a make-up day. If an employee should lose one or more days in a workweek and use Saturday as a make-up day the pay shall be at the regular hourly base wage rate and benefits. Reasons to use Saturday as a make-up day shall be:

1. Absence during the week was at the employee's request
2. Shortened workweek due to acts of God
3. Job site circumstances beyond the control of the tile contractor caused the employee to miss a day's work on that job.

M00128

7

Section 4 <u>Occupied Nonresidential Work</u> all occupied nonresidential work performed before 8:00 am and after 4:30 PM Monday through Friday will be compensated for at a premium rate of ten percent (10%) per hour above scale provided the premium hours do not bring total hours worked to more than forty (40) hours per week.

Section 5 <u>Holidays</u> The Employer agrees to recognize the following holidays. If the holiday falls on Sunday it shall be recognized on the following Monday. If the holiday falls on a Saturday it shall be recognized as a Saturday only holiday.
1. New Year's Day
2. Memorial Day
3. Independence Day
4. Labor Day
5. Veterans Day
6. Thanksgiving Day
7. Christmas Day

Section 6 <u>Show-up Time</u> When an employee is requested by an employer and reports to work pursuant to said request the employee is entitled to a minimum of two (2) hours show-up time at regular wage except where something unusual and beyond the control of the Employer occurs, which makes it impossible for the employee to work between the time said request was made and the time the employee reports for work.

M00128

8

## ARTICLE V
## TRANSPORTATION EXPENSES

Section 1 <u>Reimbursement</u> Employees shall be reimbursed for transportation and room and board on out of town jobs in the following manner:

Mileage Zones: Air miles starting from I-270 and 40/64

   0 to 40 miles - no reimbursement
   41 to 50 miles - $6.00 each round trip
   51 to 60 miles - $9.00 each round trip

Section 1A <u>Out of Town Meal Allowance</u> 61 to 150 miles. Meal rate to be paid for duration of the job based on five (5) days per week as follows:

   May 1, 2001 $21.00 per day
   May 1, 2002 $21.00 per day
   May 1, 2003 $21.00 per day

151 miles and over - meal rates to be paid for duration of the job based on seven (7) days per week as follows:

   May 1, 2001 $21.00 per day
   May 1, 2002 $21.00 per day
   May 1, 2003 $21.00 per day

Section 1B <u>Out of Town Motel Allowance</u> 61-150 miles Employer agrees to pay actual cost for motel room based on double occupancy for five (5) days per week for duration of the job. This cost to be paid as an expense allowance. The allowance shall be $35.00 per night or the rate plus tax quoted by <u>Super 8 Motels</u>, whichever is greater.

150 miles and over - Employer agrees to pay actual cost for motel room based on double occupancy for seven (7) days per week for duration of the job. This cost to be paid as an expense allowance. The allowance shall be $35.00 per night or the rate plus tax quoted by <u>Super 8 Motels</u>, whichever is greater.

M0012B

9

Section 1C - Travel Allowance 61 miles and over. Actual travel time to and from job site based on 60 mph average shall be paid for one round trip. One round trip bus or train fare to be paid in addition to above.

It being understood, should an employee be removed from the job site before the completion of said job, and employee returning to said job site, shall be entitled to said meal rate and bus or train fare plus travel time for another round trip.

It being understood that should an employee be sent to a job site by himself/herself, the employer shall pay the full room rate and the meal rate shall prevail for each of the three (3) years covering this working agreement.

Section 2 it is further understood and agreed that when an employee's automobile is used for transportation as set out in Section 1, only the owner of said automobile shall be paid the operating expenses set out above. Employees are to use their automobiles at their own discretion.

Section 3 Parking Contractors/Employers agree to pay parking based on actual expenses upon the presentation of paid receipt.

## ARTICLE VI

## HIRING PREFERENCE

Subject to the policies regarding traveling members established from time to time by the International Union of Bricklayers and Allied Craftworkers, the employer, when engaged in any construction work within the geographic area covered by this Agreement, shall, in hiring employees covered by this Agreement, give preference to persons residing or normally employed in the geographic area covered by this Agreement. Layoffs shall be in reverse order of hire except where it is necessary to retain employees with certain skills in order to complete the project.

## ARTICLE VII

## SUBCONTRACTING

Section 1 The employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

MOOl28

10

Section 2 All charges of violations of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedures for the handling of disputes and the final and binding arbitration of disputes.

## ARTICLE VIII

## CHECK-OFF AUTHORIZATION

Section 1 <u>Agreement to Deduct</u> The Employer agrees to deduct and withhold from the pay due each employee covered by this Agreement a sum equal to sixty cents (.60) per hour for all hours worked, provided the Employer has received written authorization from the employee, and to remit said sum to the Union.

Section 2 <u>Authorization to Deduct</u> The signed authorization granting the Employer the authority to deduct the amount stated in Section 1 shall read as follows:

I, the undersigned, hereby verify that I am a member in good standing of Bricklayers and Allied Craftworkers, Local #18 Mo AFL-CIO, and I authorize you to withhold from my weekly pay check a sum equal to sixty cents (.60) per hour for all hours worked by me and to remit said amount to Local #18 MO. The undersigned further agrees and understands that this statement shall constitute and be a full and complete release for the aforesaid deduction from my weekly paycheck when paid to Local #18 MO. This authorization shall be irrevocable for a period of one (1) year from the date hereof or the termination date of the applicable collective bargaining agreement whichever first occurs and shall be renewable for successive one (1) year periods unless I give written notice to the Employer and the Union at least thirty (30) days preceding the expiration of each period of irrevocability.

------------------------------          ------------------------------------------------
Date                                            Signature

Section 3 <u>BAC I.U. Dues Check-off</u> The Employer agrees to deduct an amount of one percent (1%) of gross total package for each hour worked from the pay of each employee who is a union member and who executes a voluntary check-off authorization form for the Bricklayers & Allied Craftworkers. Deductions shall be in the amount and at the intervals specified on the check-off authorization form The Employer agrees to transmit BAC I.U. dues deductions to the International Union of Bricklayers and Allied Craftworkers. The transmittals shall occur on a MONTHLY basis and shall be accompanied by a list of the names of those employees for whom BAC I.U. dues deductions have been made and the amount deducted for each employee.
The deduction shall continue for the life of this Agreement for those employees who sign BAC I.U. dues authorization forms unless they are revoked individually and in writing.

M00128

11

## ARTICLE IX

### WORKING RULES

Section 1 <u>Working Foreman</u> A working foreman shall be appointed on all jobs where eight or more union members are employed and his/her wages shall be one dollar fifty cents (1.50) per hour over and above the prevailing wage rate for journeymen setters.

Section 2 <u>Prohibition of Piece Work</u> Employers shall not bargain or contract with each other to lay a designated number of feet of tile for the day's work, nor shall they bargain or contract that a mechanic do a certain piece of work in a designated time. This bargaining or contraction shall be regarded as piece work which is not within the contemplation of the parties signing this Agreement and will be deemed by the Union to be a material breach of the Agreement; in which event the Union may take any action it deems necessary not withstanding any other provision of the Agreement.

Section 3 <u>No Limitation of Work</u> There shall be no limitation of the amount of work an employee shall perform during his working day or as to the use of machinery or tools. If an employee leaves early without permission and claims a full day worked, the employee will be docked for the time not worked and will be subject to disciplinary action by the contractor up to and including termination for cause.

Section 4 <u>Orders and Instructions</u> All orders and instructions to employees, including discharging them, shall be given by the Employer or Superintendent, unless the working foreman is specifically instructed to do so.

Section 5 <u>Proper Working Instructions</u> The Employer shall furnish to the Local #18 member proper working instructions, covering all work to be done on any and all jobs. On a complicated piece of work a setting plan shall accompany working instructions.

Section 6 <u>Working Equipment</u> All employees must be supplied with the proper working equipment such as: Soaking tub, straight edges, float strips, mixing boxes, wheelbarrows, shovels, all cutting wheels, etc., to be furnished and delivered on the job by the Employer and it is further agreed that the Employer may have the option as to whether he/she will furnish power tools and excessive equipment, such as quarry tile cutters, large chisels, etc. However it is distinctly understood that the employee does not at any time have to furnish such equipment on jobs where the use of excessive tools such as large or small power tools, chisels, etc. are required to properly do the job. It being understood that all employees shall equip themselves with proper hand tools. That the employee **MUST INSPECT ALL EQUIPMENT DAILY AND MUST NOTIFY THE CONTRACTOR IMMEDIATELY IF ANY OF THE EQUIPMENT IS NOT IN PROPER SAFE CONDITION.**

M00128

12

Section 7 <u>Epoxy Materials</u> all work with epoxies to be in strict accordance with manufacturer's written instructions and Local Health Department Regulations. The employer shall supply all necessary equipment such as gloves and floats. The Union shall reserve the right to remove all "Employees" from any apoxie or epoxy job where the above is not strictly adhered to. This shall include the right to notify the City and State Health Departments of flagrant violations of health hazards.

Section 8 <u>Maintenance of Equipment</u> Employers understand that OSHA provides for certain responsibilities for the proper use of equipment and that they will provide such equipment in a manner consistent with safety rules and obligations. The employee agrees to exercise prudent responsibility for the equipment furnished them by the employer including the proper care, maintenance and cleaning. Failure to do so may result in disciplinary action up to and including dismissal. Such tools, equipment and supplies will be used only in performance of work for their employer. When an employer requests an employee to return company tools in his/her possession the Union will cooperate to expedite said return.

Section 9 <u>Faulty Work</u> it is agreed that all materials and workmanship in connection with any installation shall be of such standards of quality so as not to destroy the true principles of the trade. In the event of a disagreement regarding the quality of a particular installation a committee composed of an equal number from the Union and Contractors shall inspect the work and render a decision which shall be final and binding upon all parties concerned. If the complaint is found to be justified and the employee is at fault, the member shall be required to repair the work on his or her own time. The employer shall supply the materials.

Section 10 <u>Personal Appearance</u> The employer and union agree that the tile & marble trade is a service industry and personal appearance presents an important visual image to the customer. Qualified, professional union journeyworkers should present a neat, clean well-groomed appearance. Proper attire will be worn at all times. In the interest of safety and appearance the following general guidelines will be followed for the benefits of both the union and the employer:
   A. Clean, neat, well-groomed appearance
   B. No shorts
   C. No smoking in occupied residence or public place where prohibited
   D. Must wear safety equipment as required

Section 11 <u>Maintenance of Skills</u> Because of the rapid development of new materials and methods of installation in the Tile & Marble Industry both management and union recognize the need for continuing education in order to stay current with the technical advances of the Industry. Therefore the journeyman level Tile Setter, Marble Setter, and Tile & Marble Finisher agree to participate in training classes and informational seminars as provided by the training school and the Tile & Marble Contractors.

M00128

13

Section 12 Drug Testing The Employer may require employees to submit to testing for alcohol or controlled substances to the extent and in the manner required by applicable law or by a project owner or in any reasonable manner for the purpose of promoting safety in the following circumstances; When there is reasonable cause to believe that an employee has used or is under the influence of such substances during working hours, when an employee has been involved in an accident involving personal injury or property damage on the job, or at random providing that an employer may not require random testing of any one employee more than twice in any calendar year. Positive test results indicating the presence of non-prescribed marijuana, cocaine, opiates, amphetamines or phencyclidine in any quantity or blood alcohol of 10/100th of one percent or more by weight or failure to submit to the drug and alcohol screen test may result in disciplinary action up to and including dismissal.

In order to enforce this policy it may be necessary to require appropriate biological specimens from both job applicants and/or current employees. When this activity is required all testing will be conducted by a company approved medical testing laboratory that has been licensed by the state. The company will bear all cost for drug and alcohol testing of employees.

## ARTICLE X

### EMPLOYER - CONTRACTOR

Section 1 Determination of Status of Contractor a key officer employed by a company or corporation and a member of Local #18 MO may elect to pay his/her check off dues (Article VIII, Section 1) plus a flat fee of forty dollars ($40) per month with no benefit package. This will entitle that person to work with the tools. If however the company or corporation hires three or more members of Local #18 MO he/she must lay down the tools.

If he/she elects to pay into the benefit package he/she will pay a minimum of one hundred twenty (120) hours per month. He/she will then be allowed to work with the tools.

If he/she carries a Union Card he/she will be allowed to attend union meetings but by IU law will be restricted from holding office or having an individual vote.

Section 2 Surety Bond Any new contractor becoming a party to this Agreement after its effective date shall secure and maintain a surety bond in the minimum amount of ten thousand dollars ($10,000) to guarantee payment of all wages, fringes and contributions provided for herein and shall furnish to the union evidence of the procurement and maintenance of bond in such amount for a period of one (1) year. Any contractor failing to pay wages or fringe benefits at the proper time provided herein will secure and maintain such a surety bond.

M00128

14

Section 3 Unemployment Compensation Insurance By the execution of this Agreement the Employer hereby agrees that he/she shall be covered under the laws of the State of Missouri relating to unemployment compensation insurance and the Employer shall provide coverage for all employees covered by this Agreement. The Employer further agrees to post account numbers indicating such coverage with the Joint Arbitration Board.

Section 4 Worker's Compensation Insurance All employees employed by an Employer under this Agreement are to be protected by Worker's Compensation Insurance as required under the laws of the State in which said employees are employed. The Employer shall furnish to the Joint Arbitration Board a certificate from the insurance company stating that such insurance has been provided. This certificate shall specify the date when such compensation insurance expires. The Employer agrees that such compensation insurance shall be maintained by him/her throughout the life of this Agreement. If an Employer fails to obtain Worker's Compensation Insurance the Union is obligated to take economic action against said employer including but not limited to removal of employees from the job, strike, picket or any other lawful action. Before any work is undertaken by employees the above-mentioned certificate must be on file with the Joint Arbitration Board.

The policies are not cancelable or subject to reduction in coverage until ten (10) days after receipt by the insured and the Union of written notice as evidenced by return receipt.

Section 5 Uniformity of Operation Any Employer operating in this jurisdiction shall work as provided in this Agreement and under which all other Employers, parties hereto now operate with this jurisdiction.

Section 6 Most Favored Nation Clause The Union agrees that if it should enter into an agreement which provides for terms or conditions of employment which are more favorable than those contained in this Agreement for specific projects, particular segments of the marble, ceramic or quarry tile market or certain geographic areas, those same terms and conditions of employment will be made available to all Employers on the specified projects, particular segments of the market or in those geographic areas covered.

M00128

15

## ARTICLE XI

## NO STRIKE/NO LOCKOUT
## AND
## ARBITRATION

Section 1 - There shall be no strikes or lockouts over a dispute concerning an alleged breach of this Agreement during its term until the grievance procedures of this Article have been exhausted and then only in the event a party fails or refuses to abide by a final decision. This Article shall not apply in those cases where an Employer fails or refuses to make in whole or in part any payments required under this Agreement including all wages, local union fringe benefits or other fund contributions that have been established through bonafide collective bargaining.

Section 2 - All questions or differences arising between the parties to this Agreement relating to its interpretation or enforcement or the subject matter thereof shall be referred to a Joint Arbitration Board for determination or settlement. Pending a decision of the Joint Arbitration Board the status quo shall exist. If either party refuses to abide by the Award then the injured party will be free to take whatever economic action it deems necessary.

Section 3 <u>Joint Arbitration Board</u>   This Joint Arbitration Board shall be composed of ten (10) members. Five (5) to be employers, signers of this Agreement and five (5) to be members of Local #18 MO. The employer members shall be selected by the employers at a meeting of their organization and the union members to be elected by their union in the regular manner. Any decisions made by a majority vote of this committee shall be binding upon the parties signatory to this Agreement.

Grievance Procedures are as follows:

No grievance shall be recognized unless it is called to the attention of the employer by the union or to the attention of the union by the employer within five (5) days after the alleged violation is committed or discovered.

Step 1: The employee and the employer try to settle the grievance. This attempt to settle shall be done within five (5) days excluding Saturday, Sunday and legal holiday.

Step 2: If step one does not settle the grievance it shall be referred to the Business Manager. The manager shall than meet with the employer and the employee and attempt to settle the grievance. They shall meet within three (3) days excluding Saturday, Sunday and legal holidays.

M00128

16

Step 3: If step two does not settle the grievance it shall be referred to the Joint Arbitration Board within three (3) days excluding Saturday, Sunday and legal holidays. The Joint Arbitration Board shall have five (5) days to reach a decision.

Step 4: If a decision is not reached the Joint Arbitration Board shall select an impartial arbitrator to review with the board all evidence submitted relating to the grievance and then cast the deciding vote. If the Joint Arbitration Board cannot agree on an arbitrator the matter then is referred to the American Arbitration Association.

All expenses incurred by a special arbitration shall be borne jointly by both parties to this Agreement, (Union and Contractor Association). Any decision reached during the grievance procedures shall be final and binding on all parties but shall not be precedent setting.

ARTICLE XII

PRESERVATION OF WORK

Section 1 - in order to protect and preserve for the employees covered by this Agreement all work heretofore performed by them and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project under its own name or under the name of another, as a corporation, company, partnership, or any other business entity including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

Section 2 - All charges of violations of Section 1 of this Article shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article XI of this Agreement. As a remedy for violations of this Section the arbitrator (or arbitration body ) provided for in Article XI is empowered at the request of the Union, to require an Employer to 1) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations and 2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations, including such interest as may be prescribed by the trustees or by law. Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this Section, nor does it make the same or other remedies unavailable to the Union for violations of other sections or articles of this Agreement.

M00128

17

Section 3 - If, as a result of violations of this Article, it is necessary for the Union and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with Section 2 above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or the fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

## ARTICLE XIII

### WAGES AND BENEFITS
### TILE & MARBLE SETTERS
### RATES OF PAY, WELFARE, PENSIONS

Section 1 Tile & Marble Setters Rates of Pay
(a) Effective May 1, 2001 through April 30, 2002 total wages, including fringe-benefits increases, will be $31.27 the breakdown would be as follows: May 1, 2001 - $1.25 per hour increase, .70 cents increase hourly wage, .30 cents increase Health & Welfare, .15 cents increase Local pension and .10 cents increase IU pension. Wages as of May 1, 2001 - $23.32 per hour.

(b) Effective May 1, 2002 - $1.15 per hour wage increase. Said increase to be in wages or fringe benefits at the Union's option.

(c) Effective May 1, 2003 - $1.10 per hour wage increase. Said increase to be in wages or fringe benefits at the Union's option.

(d) Whenever the Union's option is exercised herein, the Union shall notify the Employer of the breakdown between wages and fringe benefits no later than thirty (30) days preceding the effective date.

Section 2 Health & Welfare The Employer shall contribute the amount of $3.90 per hour for each hour worked by all Tile & Marble Setter members of Local #18 MO including all apprentices per Section 5 of Article XIII as of May 1, 2001 into the Bricklayers & Allied Craftworkers International Health Fund. All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due.

Section 3 Local Pension Fund Tile & Marble Setter The Employer shall make contributions in the amount of $2.58 per hour for each hour worked by all Tile & Marble Setter members of Local # 18 Mo including all apprentices per Section 5 of Article XIII into the Ceramic Tile & Marble Masons Pension Fund as of May 1, 2001. All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due. Pension will be 10% of base wages on future increases rounded to nearest cent.

M00128

18

Section 4 <u>Bricklayers & Trowel Trades International Pension Fund</u> The Employer shall contribute the amount of $1.20 per hour for each hour worked by all Tile & Marble Setters as of May 1, 2001 including all apprentices per Section 5 of Article XIII into the Bricklayers & Trowel Trades International Pension Fund.

Section 5 <u>Tile & Marble Setter Apprentice Program</u>
The rates of pay for Setter Apprentice is as follows:
a) 1st three months - 50% of journeyman wages (without Health & Welfare or Pension
　　　　　　Contributions)
b) 2nd three months - 55% of journeyman wages (with Health & Welfare and no
　　　　　　Pension Contributions)
c) 2nd six months  - 65% of journeyman wages (with Health & Welfare and
　　　　　　Pension Contributions)
d) 3rd six months   - 70% of journeyman wage
e) 4th six months   - 75% of journeyman wage
f) 5th six months   - 85% of journeyman wage
g) 6th six months   - 90% of journeyman wage

In all of the above categories all International & Local dues are to be withheld and all contributions to the Industry Advancement, International Masonry Institute and Apprentice Training Fund shall be paid per the Collective Bargaining Agreement.

WAGES AND BENEFITS
TILE & MARBLE FINISHERS
RATES OF PAY, WELFARE, PENSIONS

Section 6 <u>Tile & Marble Finishers Rates of Pay</u>

a) Effective May 1, 2001 through April 30, 2002 total wages (including fringe benefits increases) will be $28.57 The breakdown would be as follows: May 1, 2001 $1.05 per hour increase .65 cents increase hourly wage, .30 cents increase Health & Welfare .10 cents increase Local pension.  Wages as of May 1, 2001 - $21.05 per hour.

b) Effective May 1, 2002 $1.05 per hour wage increase.  Said increase to be in wages or fringe benefits at the Union's option.

c) Effective May 1, 2003 $1.00 per hour wage increase.  Said increase to be in wages or fringe benefits at the Union's option.

d) Whenever the Union's option is exercised herein, the Union shall notify the Employer of the breakdown between wages and fringe benefits no later than thirty (30) days preceding the effective date.

MO0128

19

Section 7 <u>Health & Welfare</u> The Employer shall contribute the amount of $3.90 per hour for each hour worked by all Tile & Marble Finisher members of Local #18 MO including all apprentices per Section 11 of Article XIII as of May 1, 2001 into the Bricklayers & Allied Craftworkers International Health Fund. All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due.

Section 8 <u>Local Pension Fund Tile & Marble Finisher</u> The Employer shall make contributions in the amount of $2.75 per hour for each hour worked by all Tile & Marble Finishers members of Local #18 MO including all apprentices per Section 11 of Article XIII into the Tile & Marble Finishers Pension Fund as of May 1, 2001. All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due.

Section 9 <u>Bricklayers & Trowel Trades International Pension Fund</u> The Employer shall contribute the amount of .60 cents per hour for each hour worked by all Tile & Marble Finishers as of May 1, 2001 including all apprentices per section 11 of Article XIII into the Bricklayers & Trowel Trades International Pension Fund.

Section 10 <u>Grandfather Clause</u> protecting all finishers who were members before August 1, 1989. The "Grandfather" Finisher will get a percentage raise based on all new negotiations.

Section 11a <u>Finisher Apprentice</u>. All new Finishers will go into an apprentice program. First year the apprentice will attend class. The remaining two years will be on the job training -no classes. At the end of three (3) years Finishers wages will be 85% of Setter's wages.

Section 11b <u>The Finisher Apprentice Program</u>: The rates of pay for the Finisher's Apprentice shall start at 50% of Journeyman Setters wages.
1st - 3 months - 50%  No Health & Welfare or Pension
2nd - 3 months - 55% with Health & Welfare no Pension
2nd - 6 months - 60% with full Health & Welfare & Pension
3rd - 6 months - 65% with full Health & Welfare & Pension
4th - 6 months - 70% with full Health & Welfare & Pension
5th - 6 months - 75% with full Health & Welfare & Pension
6th - 6 months - 80% with full Health & Welfare & Pension

Section 12 <u>Apprentice Fund</u> The Employer shall contribute the amount of ten (.10) cents for each hour worked by each employee covered by this Agreement to the Tile & Marble Apprentice Fund. In the event it is determined by the Joint Apprentice Committee that a greater amount is required to effectively operate the apprentice program, the Employer will increase the contribution to the Apprenticeship Fund in the amount established by the Joint Apprentice Committee.  Such increase in contribution shall come from the Union allocation of compensation increase provided for in Sections 1 and 6.

MOO128

20

Section 12A Apprentices In order to train sufficient skilled setters and finishers for the industry, the necessity for employment of apprentices and/or improver apprentices is recognized and encouraged by parties to this agreement. It is agreed that the apprenticeship standards adopted by the local Joint Apprentice Committee are incorporated herein by reference as if fully set out.

Section 13 Industry Advancement All Contractors/employers signatory to this Agreement will contribute two (.02) cents per hour for each working member of Local #18 MO employed by the contractor/employer to a fund for industry advancement. All contractors signatory to this Agreement will be considered members in good standing of the Tile & Marble Contractors Association of Greater St. Louis and will be able to hold office and vote.

Section 14 International Masonry Institute the parties to this Agreement recognize the need for effective apprenticeship and training which must be met if the industry is to grow and prosper. The parties to this Agreement believe that the IMI is the most effective and efficient instrument for meeting these needs because it offers the greatest possibility of integrating activities in this program area in an effective manner of coordinating through a single regional/international system. With this principle in mind, the parties agree as follows: effective May 1, 2001 the contribution to the International Masonry Institute shall be fifteen (.15) cents per hour for each Tile & Marble Setter and fifteen (.15) cents per hour for each Tile & Marble Finisher for which a covered employee receives pay.

Section 15 Wage Information all members of Local #18 MO shall be paid at least once a week. Friday shall be payday and that pay shall include all time up to the previous Tuesday night. Pay shall be in law money of the United States. They shall be paid not later than 4:30 PM on local work. Employee wage payment will show amount of gross pay and itemized deductions, together with dates of the pay period covered, the name of the Company, the name of the employee and total number of both regular and overtime hours worked and upon request, copies will be supplied to the funds and/or the Union office by the Employer.

Section 16 - If the contractor/employer elects to mail the pay; and should any employee not receive his/her pay at his/her residence on the Friday payday, the employer will be charged "waiting time". The limit to be two (2) days pay which will begin at 8:am and end at 4:30 PM on Saturday and Sunday. No claim will be allowed if the postmark on the letter containing the pay is Thursday PM before payday. If however, the employee is required to pick up his/her check from the shop on Saturday he/she will be paid an additional two (2) hours pay at base pay.

Section 17 - Federal Wage Control If Federal Wage Controls are imposed for the Tile & Marble section of the construction industry or the construction industry in general this local union shall therefore receive in addition to the wages and fringe benefit fund contributions provided for in this Agreement any amount previously eliminated by said Controls if wage controls were in effect less than one (1) year. If wage control is in effect for more than one (1) year then any wage increase during that one-year period would be waived. However, if that one (1) year period laps two raises, only the first raise would be waived.

M00128

21

## ARTICLE XIV
## NO DISCRIMINATION AND GENERAL UNDERSTANDING

**Section 1** <u>No Discrimination</u> The Employer(s) and the Union mutually recognize the need for implementing equal opportunity to all qualified employees and applicants for employment without regard to race, color, creed, sex, age or national origin. There shall be no discrimination against any employee because of race, color, religion, sex, national origin, age, handicap, union membership, union activity or status as a disabled veteran, or a veteran of the Vietnam Era except where age is a bonafide occupational qualification or handicap is a bonafide occupational disqualification.

**Section 2** <u>Delinquencies</u> The Employer further agrees to keep true and accurate records of his/her payroll and expenses paid to his/her employees covered by this Agreement and the employer shall make them accessible for audit by the Trustees of any existing Trust Fund or their appointee or disinterested representatives. The cost of such representative shall be paid by the Trust Fund to which contributions are due. If such audit by the disinterested party discloses errors in the bookkeeping of the employer then a cost of the audit shall be paid by the employer being investigated.

Upon notice to the Union from the Trustees of a benefit fund to which the employer is obligated to make contributions under this Agreement that the employer is delinquent in making contributions to such benefit fund, the Union shall be entitled to take all recourse, including strike action for collection of the delinquency and to protect against its reoccurrence any other provision of this Agreement notwithstanding.

Notice from the Trustees to the Union of an employer's delinquency status shall be conclusive and reliance thereon by the Union shall not be accountable. Neither the issue of delinquency in contributions nor the extent thereof nor action taken by the Union to compel collection shall be subject to the grievance and arbitration provisions of this Agreement.

In the event the Employer is delinquent in his/her contributions to the Funds and it becomes necessary for the Trustees of said funds to employ an attorney for the purpose of collecting delinquencies and any penalties, the Employer shall be responsible for and required to pay any reasonable attorney's fees and other costs incurred in the collection of said monies. In the further event the Employer is delinquent in his/her contributions to said Funds, the Union shall deem such delinquency to be a material breach of the Agreement and shall have the right to take economic action against said Employer including, but not limited to removal of the employees from the job, strike, picket, forfeiture of Surety Bond or institution of Surety Bond, (Article X, Section 2) or any other lawful economic action

**Section 3** In the event the Joint Arbitration Board approves a different and more efficient method of processing the check-off and payments of contributions such shall be implemented and shall replace all existing methods in accordance with said Board's instructions.

M0012B

22

Section 4 <u>Traveling Contractors</u> When the employer has any work specified in Article III of this Agreement to be performed outside of the area covered by an agreement with another affiliate of the International Union of Bricklayers and Allied Craftworkers, the employer agrees to abide by the full terms and conditions of the agreement in effect in the job site area. Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Article XIII of this Agreement but in no case less than the established minimum wage scale of the local agreement covering the territory in which such work is being performed plus all contributions specified in the job site Local Agreement. The employer shall, in all other matters be governed by the provisions established in the job site local. Where there is no local agreement covering the work specified in Article III of this Agreement, the full terms and conditions of this Agreement shall apply.

Section 5 <u>Out-Of-Town Contractors</u> Securing work in the jurisdiction of Local #18 MO may send one key person to such work, (one Tile Setter, or one Marble Mason); in addition, the out-of-town contractor may also send one (1) key person as a Finisher. If additional Tile Setters, Marble Masons or Finishers are needed for the job they must come from Local #18 MO. If Local #18 MO has no members available for the job, then the out-of-town contractors may bring in his/her employees from his/her home local. Local #18 MO must be notified forty-eight (48) hours in advance of start of job.

23
## ARTICLE XV

### SEVERABILITY

Section 1 <u>Validity of Agreement</u> In the event any Federal or State Law is held to invalidate any Article, Section, Clause, or Provision of this Agreement, said Article, Section, Clause or Provision shall be stricken from the Agreement and the balance and remainder of this Agreement shall remain in full force and effect.

The parties shall meet forthwith for the purpose of negotiating by amendment or otherwise any Article, Section, Clause or Provision which may be held to be illegal pursuant to a Federal or State law by a final court decision interpreting such law.

### AGREEMENT EFFECTIVE MAY 1, 2001 through APRIL 30, 2004

|                          |          | TILE & MARBLE CONTRACTORS' ASSOCIATION ST.LOUIS & VICINITY |          |
|--------------------------|----------|-----------|----------|
| **BAC LOCAL #18 MO**     |          | **EMPLOYER** |          |
| **UNION**                |          |           |          |
| Name                     | Date     | Name      | Date     |
| *James Hennis*           | 4/30/01  | *George R Wood* | 5-1-01 |
| *Michael Burns*          | 4/30/01  | *Emily A Williams* | 5/1/01 |
| *Jim Mull*               | 4/30/01  | *[signature]* | 5/2/01 |
| *Stephen C. Layne*       | 5/2/01   | *Nelson J Faro* | 5/3/2001 |
| *Jeffrey Fate*           | 5/2/01   | *[signature]* | 05/03/01 |

Name of Company: *Mainini Tile Company*

Signature and Title: *[signature]*                PRES.

Company Address: *16624 Chesterfield Airport Road*

Telephone: *(636) 532-1113*

Date: *5/31/01*

M00128

# INDEX

Apprentice--------------------------------------------------20
Apprentice Fund-------------------------------------------19
Arbitration------------------------------------------------15
Authorization to Deduct-----------------------------------10
Delinquencies---------------------------------------------21
Determination of Contractor-------------------------------13
Drug Testing----------------------------------------------13
Dues Check-Off-------------------------------------------10
Duration---------------------------------------------------3
Epoxy Materials------------------------------------------12
Equipment------------------------------------------------11
Faulty-----------------------------------------------------12
Favored Nation Clause------------------------------------14
Federal Wage Control-------------------------------------20
Finishers Territorial Jurisdiction--------------------------4
Grandfather Clause---------------------------------------19
Health & Welfare Setters---------------------------------17
Health & Welfare Finishers------------------------------19
Hiring Preference------------------------------------------9
Holidays---------------------------------------------------7
Hours------------------------------------------------------6
IU Pension Setters----------------------------------------18
IU Pension Finishers-------------------------------------19
Industry Advancement------------------------------------20
International Masonry Institute---------------------------20
Limitation of Work----------------------------------------11
Local Pension Setters------------------------------------17
Local Pension Fitters------------------------------------19
Maintenance of Skills------------------------------------12
Maintenance of Equipment-------------------------------12
Management Recognition----------------------------------3
Marble Setter Work----------------------------------------5
Mileage Reimbursement-----------------------------------8
No Discrimination & General Understanding--------21

Occupied Non-Residential----------------------------------7
Orders and Working Instructions-------------------------11
Out-of-town Meal Allowance-------------------------------8
Out-of-Town Contractors-----------------------------------22
Out-of-Town Travel Allowance----------------------------9
Out-of-Town Motel Allowance-----------------------------8
Overtime----------------------------------------------------6
Parking-----------------------------------------------------9
Personal Appearance--------------------------------------12
Piece Work-------------------------------------------------11
Preservation of Work--------------------------------------16
Regular Work Hours----------------------------------------6
Saturday Make-up Day--------------------------------------6
Scope of Agreement----------------------------------------4
Setters Territorial Jurisdiction----------------------------4
Show-up Time-----------------------------------------------7
Sub-Contracting--------------------------------------------9
Surety Bond------------------------------------------------13
Teamwork---------------------------------------------------6
Tile & Marble Finishers Apprentice Program-----------19
Tile & Marble Finisher Work------------------------------6
Tile & Marble Finisher Wages & Benefits-----------18
Tile & Marble Setter Apprentice Program---------------18
Tile & Marble Setter Wages & Benefits-------------17
Tile Setter Work--------------------------------------------5
Traveling Contractors-------------------------------------22
Unemployment Compensation Insurance-----------14
Uniformity of Operation-----------------------------------14
Union Recognition------------------------------------------3
Union Security----------------------------------------------4
Validity of Agreement-------------------------------------23
Wage Information------------------------------------------20
Workers Compensation Insurance---------------------14
Working Foreman------------------------------------------11

EXHIBIT  B

MO  0428

BRICKLAYERS AND ALLIED CRAFTWORKERS

INTERNATIONAL UNION OF AMERICA

TILE AND MARBLE SETTERS AND FINISHERS
LOCAL UNION #18 OF MISSOURI

AGREEMENT WITH

TILE AND MARBLE CONTRACTORS ASSOCIATION

ST. LOUIS AND VICINITY

MAY 1, 2004 through APRIL 30, 2007



RECEIVED
JUN 2 8 2004
COLLECTIVE BARGAINING SERVICES

1

## TABLE OF CONTENTS

Table of Contents ........................................................1-2
Duration ........................................................3
Union Recognition ........................................................3
Management Recognition ........................................................3
Union Security ........................................................4
Scope of Agreement ........................................................4
Setters Territorial Jurisdiction ........................................................4
Finishers Territorial Jurisdiction ........................................................4
Tile Setter Work ........................................................5
Marble Setter Work ........................................................6
Teamwork ........................................................6
Regular Work Hours ........................................................6
Overtime ........................................................6
Saturday Make-up Day ........................................................6
Occupied Non-Residential ........................................................7
Holidays ........................................................7
Show-up Time ........................................................7
Shift Work ........................................................7
Mileage Reimbursement ........................................................8
Out-of-Town Meal Allowance ........................................................8
Out-of-Town Motel Allowance ........................................................8
Out-of-Town Travel Allowance ........................................................9
Parking ........................................................9
Hiring Preference ........................................................9
Sub-Contracting ........................................................9
Agreement to Deduct ........................................................10
Authorization to Deduct ........................................................10
Dues Check-Off ........................................................10
Working Foreman ........................................................11
Piece Work ........................................................11
Limitation of Work ........................................................11
Orders and Working Instructions ........................................................11
Equipment ........................................................11
Epoxy Materials ........................................................12
Maintenance of Equipment ........................................................12
Faulty Work ........................................................12
Personal Appearance ........................................................12
Maintenance of Skills ........................................................12

2

Drug Testing ...................................................13
Determination of Contractor ...............................13
Surety Bond ...................................................13
Unemployment Compensation Insurance ..................14
Worker's Compensation Insurance .......................14
Uniformity of Operation ...................................14
Favored Nation Clause ....................................14
Arbitration ...................................................15
Preservation of Work .......................................16
Tile & Marble Setter Wages & Benefits ..................17
Tile & Marble Setter Apprentice Program ...............18
Tile & Marble Finisher Wages & Benefits ...............18
Grandfather Clause .........................................19
Tile & Marble Finishers Apprentice Program ...........19
Apprentice Fund ............................................19
Industry Advancement .....................................20
International Masonry Institute ..........................20
Federal Wage Control .....................................20
No Discrimination & General Understanding ...........21
Delinquencies ...............................................21
Traveling Contractors ......................................22
Out-of-Town Contractors ..................................22
Validity of Agreement .....................................23
Index ..........................................................24

3

## AGREEMENT

This Agreement entered into this first day of May, 2004 by and between the TILE & MARBLE CONTRACTORS ASSOCIATION OF GREATER ST. LOUIS on behalf of its member Tile & Marble Contractors of St. Louis and Vicinity, and such other contractors who are signatory hereto and such other contractors who may become signatory hereto (hereinafter referred to as the Employer or Contractor) and the INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, LOCAL #18 OF MISSOURI, AFL-CIO (hereinafter referred to as the Union).

## ARTICLE I

## DURATION - TERMINATION -AMENDMENT

This Agreement shall be effective commencing May 1, 2004 and shall continue in full force to and including April 30, 2007 and shall be automatically continued yearly thereafter unless written notice of decision to negotiate a new Agreement, in whole or in part, is given in writing by either party to the other not later than sixty (60) days nor more than ninety (90) days prior to the expiration date or any anniversary date thereafter. The parties may at any time mutually agree to change or amend any part of this Agreement and such change or amendment shall not affect the continuing nature of this Agreement. Such change or amendment shall not be effective however until reduced to writing and signed by both parties.

## ARTICLE II

## MANAGEMENT - UNION RECOGNITION AND SECURITY

Section 1 - <u>Union Recognition</u> The employer hereby recognizes and acknowledges that the Union is the exclusive representative of all its employees in classification of work falling within the jurisdiction of the Union, as defined in Article III of this Agreement, and in the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers, for the purpose of collective bargaining as provided for in the Labor Management Relations Act of 1947, as amended.

Section 2 - <u>Management Recognition</u> The Union hereby recognizes and acknowledges the Tile & Marble Contractors Association of St. Louis as the representative of Employers and acknowledges that the maintenance of job site discipline is the responsibility of Employers, and that except as herein provided Employers shall have the right to hire, suspend, discipline or fire for just cause, direct the work force and in general operate their business in accordance with their judgment.

4

Section 3 - <u>Union Security</u> No later than eight (8) days following the effective date of this Agreement, all present employees must, as a condition of continued employment, be or become members of the Union; all employees hired after the effective date of this Agreement shall be or become and remain members of the Union no later than eight (8) days following the first day of their employment in accordance with the provisions of Section 8 of the National Labor Relations Act, as amended. Failure of any employee to comply with the provisions of this subsection shall, upon request of the Union, result in termination of such employees, provided that the Union has given the employee four (4) days notice that his/her obligation to make payment has not been met and that his/her delinquency renders him/her liable to termination under this section. The Employer shall not be obligated to dismiss an employee for non-membership in the Union; (a) if he/she has reasonable grounds for believing that such membership was not available on the same terms and conditions generally applicable to other members; or (b) if he/she has reasonable grounds for believing that such membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

### ARTICLE III

### WORK JURISDICTION

Section 1 - <u>Scope of Agreement</u> This Agreement covers all Tile Layer, Marble Setter, and Tile & Marble Finisher employees of the Employer engaged in the setting, slabbing or installing of all classes of tile or marble, whether for interior or exterior purposes, in any public or private building located anywhere within the territorial jurisdiction of the Union.

Section 2a <u>Tile & Marble Setters Territorial Jurisdiction</u> This jurisdiction shall consist of the following counties in the State of Missouri; Clark, Lewis, Marion, Ralls, Pike, Lincoln, Warren, St.Charles, St.Louis, Franklin, Jefferson, Crawford, and including the city of St.Louis.

Section 2b <u>Tile & Marble Finishers Territorial Jurisdiction</u> This jurisdiction shall consist of the following counties in the State of Missouri: Clark, Lewis, Marion, Ralls, Pike, Lincoln, Warren, St.Charles, St. Louis, Franklin, Jefferson, Crawford. This includes the City of St. Louis and the following counties in the State of Illinois: Madison, St. Clair, Bond, Fayette, Clinton, Marion, Monroe, Washington, Calhoun, Jersey, Macoupin and Montgomery.

Section 2c In the event the territorial or trade jurisdiction of the Union shall be extended during the term hereof, this Agreement shall cover such extensions.

5

Section 3 Tile Setter Work is defined as:

(a) The laying, cutting, or setting of all tile, and tile substitutes, where used for floors, walls, ceilings, walks, promenade roofs, exterior veneers, stair treads, stair risers, facings, hearths, fireplaces and decorative inserts, together with any marble plinths, thresholds or window stools used in connection with any tile work; also to prepare and set all concrete, cement, brickwork or other foundations or material that may be required to properly set and complete such work.

(b) The application of a coat or coats of mortar, prepared to proper tolerance to receive tile on floors, walls and ceilings regardless of whether the mortar coat is wet or dry at the time the tile is applied to it.

(c) The setting of all tile bonded with mortar, where the bed is floated, screeded, slabbed or buttered and where joints are not filled in the same operation.

(d) The setting of all tiles by the adhesion method with organic and/or inorganic thin-bed bonding materials where such bonding material is applied to the backing surface and/or the back of tile units or sheets of tile.

(e) The setting of tile as herein provided shall include the installation of underlayment, backer-board, waterproofing membrane, accessories and the insertion of decorative tile inserts in other materials.

(f) The setting, sealing, caulking, and installation of prefabricated tile systems.

Section 4 "Tile" is herein defined as the following products:

(a) All burned clay products, as used in the Tile Industry either glazed or unglazed.

(b) All composition materials, marble tiles, glass mosaics and all substitute materials for tile made in the tile-like units.

(c) All mixtures in tile-like form of cement, metals, plastics and other materials, that are made for and intended for use as a finished floor and all places where tile is used to form a finished interior or exterior surface for practical use, sanitary finish or decorative purposes.

Section 5 Marble Setter Work is defined as: Including, but not limited to the handling, erection or installation of interior Stone, Marble, Slate, Granite, Quartzite, Limestone, Travertine, Art Marble, Serpentine, Alberence Stone, Blue Stone or other Stone. Meaning as to Stone any foreign or domestic materials as specified and used in building interiors and customarily known as stone in the trade: Carrora, Salonyx, Vitrolite, and similar opaque glass and the laying of all Marble tile, Terrazzo tile, Slate tile, or any other material that may be used as substitutes for any of the aforementioned materials and which are installed in a similar manner. Also any of the aforementioned materials where used on exterior work up to and including two (2) inches of thickness

6

**Section 6** Tile & Marble Finishers Work is defined as:

(a) The handling, at the building site, all sand, cement, tile, marble or stone as defined above and all other materials that may be used and installed by tile layer, or marble mason member of Local #18 MO.

(b) The grouting, cleaning, sealing, and mixing on the job site, and all other work as required in assisting the setter.

**Section 7** Teamwork is essential for the improvement of the Tile & Marble Industry. Working together as a team will achieve a high standard of workmanship and quality. All members of Local #18 MO must work together in a harmonious way to combat the non-union and open shop movement.

## ARTICLE IV

## HOURS OF WORK - OVERTIME AND HOLIDAYS

**Section 1** Hours The standard workday shall consist of eight (8) hours of work between the hours of 8:00 am and 4:30 PM with a 30 minute unpaid lunch hour occurring in the middle of the shift. The standard workweek shall consist of five standard workdays commencing on Monday and ending on Friday, inclusive. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.

**Section 2** Overtime All time worked before and after the established eight (8) hour work day, Monday through Friday, and all time worked on Saturdays, shall be paid for at the rate of time and one-half (1 1/2) the hourly base wage rate in effect. All time worked on Sundays and on the holidays specified in Section 5 of Article IV shall be paid for at the rate of double the hourly base wage rate in effect.

**Section 3** Saturday Make-Up Day all work done on Saturday will be done at time and one-half (1 1/2) unless the employer and employee mutually agree that Saturday shall be used as a make-up day. The employee shall not be disciplined or discriminated against for failing to agree to use Saturday as a make-up day. If an employee should lose one or more days in a workweek and use Saturday as a make-up day the pay shall be at the regular hourly base wage rate and benefits. Reasons to use Saturday as a make-up day shall be:

1. Absence during the week was at the employee's request
2. Shortened workweek due to acts of God
3. Job site circumstances beyond the control of the tile contractor caused the employee to miss a day's work on that job.

7

**Section 4** <u>Occupied Nonresidential Work</u> all occupied nonresidential work performed before 8:00 am and after 4:30 PM Monday through Friday will be compensated for at a premium rate of ten percent (10%) per hour above scale provided the premium hours do not bring total hours worked to more than forty (40) hours per week.

**Section 5** <u>Holidays</u> The Employer agrees to recognize the following holidays. If the holiday falls on Sunday it shall be recognized on the following Monday. If the holiday falls on a Saturday it shall be recognized as a Saturday only holiday.
1. New Year's Day
2. Memorial Day
3. Independence Day
4. Labor Day
5. Veterans Day
6. Thanksgiving Day
7. Christmas Day

**Section 6** <u>Show-up Time</u> When an employee is requested by an employer and reports to work pursuant to said request the employee is entitled to a minimum of two (2) hours show-up time at regular wage except where something unusual and beyond the control of the Employer occurs, which makes it impossible for the employee to work between the time said request was made and the time the employee reports for work.

**Section 7** <u>Shift Work</u> On Commercial or Industrial projects where more than one shift during regular working hours (7:00 a.m. to 3:30 p.m.) is required by the General Contractor or the owner of the project because of a scheduled completion date needs to be met, the rate of pay will be as follows:

2nd and 3rd Shift, Monday thru Friday, will be paid at a rate of time plus 10%. Any shift of more than 8 hours, all hours worked in excess of 8 hours will be at time and one half (1 ½) the regular base wage plus 10%. There must be at least a minimum of three (3) consecutive days of shift work required on the project. No employee shall be disciplined or discriminated against for failing to agree to work the 2nd or 3rd shift. All work on Saturday will be time and one half (1 ½) the hourly base wage in effect. All work on Sunday and Holidays will be at double the hourly base wage in effect.
2nd and 3rd shift on Saturday will be at time and one half (1 ½) the hourly base wage in effect plus 10% premium. 2nd and 3rd shift on Sunday and Holidays will be double the hourly base wage in effect plus 10% premium.

8

## ARTICLE V
## TRANSPORTATION EXPENSES

**Section 1** Reimbursement Employees shall be reimbursed for transportation and room and board on out of town jobs in the following manner:

Mileage Zones: Air miles starting from I-270 and 40/64

      0 to 40 miles - no reimbursement
      41 to 50 miles - $6.00 each round trip
      51 to 60 miles - $9.00 each round trip

**Section 1A** Out of Town Meal Allowance 61 to 150 miles. Meal rate to be paid for duration of the job based on five (5) days per week as follows:

      May 1, 2004 $21.00 per day
      May 1, 2005 $21.00 per day
      May 1, 2006 $21.00 per day
151 miles and over - meal rates to be paid for duration of the job based on seven (7) days per week as follows:

      May 1, 2004 $21.00 per day
      May 1, 2005 $21.00 per day
      May 1, 2006 $21.00 per day

**Section 1B** Out of Town Motel Allowance 61-150 miles Employer agrees to pay actual cost for motel room based on double occupancy for five (5) days per week for duration of the job. This cost to be paid as an expense allowance. The allowance shall be $35.00 per night or the rate plus tax quoted by Super 8 Motels, whichever is greater.

150 miles and over - Employer agrees to pay actual cost for motel room based on double occupancy for seven (7) days per week for duration of the job. This cost to be paid as an expense allowance. The allowance shall be $35.00 per night or the rate plus tax quoted by Super 8 Motels, whichever is greater.

9

Section 1C - <u>Travel Allowance</u> 61 miles and over.  Actual travel time to and from job site based on 60 mph average shall be paid for one round trip.  One round trip bus or train fare to be paid in addition to above.

It being understood, should an employee be removed from the job site before the completion of said job, and employee returning to said job site, shall be entitled to said meal rate and bus or train fare plus travel time for another round trip.

It being understood that should an employee be sent to a job site by himself/herself, the employer shall pay the full room rate and the meal rate shall prevail for each of the three (3) years covering this working agreement.

Section 2 it is further understood and agreed that when an employee's automobile is used for transportation as set out in Section 1, only the owner of said automobile shall be paid the operating expenses set out above.  Employees are to use their automobiles at their own discretion.

Section 3 <u>Parking</u> Contractors/Employers agree to pay parking based on actual expenses upon the presentation of paid receipt.

**ARTICLE VI**

**HIRING PREFERENCE**

Subject to the policies regarding traveling members established from time to time by the International Union of Bricklayers and Allied Craftworkers, the employer, when engaged in any construction work within the geographic area covered by this Agreement, shall, in hiring employees covered by this Agreement, give preference to persons residing or normally employed in the geographic area covered by this Agreement.  Layoffs shall be in reverse order of hire except where it is necessary to retain employees with certain skills in order to complete the project.

**ARTICLE VII**

**SUBCONTRACTING**

Section 1 The employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

Section 1a The employees agree not to perform any duties of the trade for compensation unless it is under the direction of a Tile and Marble Contractor signatory to the agreement.

Section 2 All charges of violations of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedures for the handling of disputes and the final and binding arbitration of disputes.

## ARTICLE VIII

### CHECK-OFF AUTHORIZATION

Section 1 <u>Agreement to Deduct</u> The Employer agrees to deduct and withhold from the pay due each employee covered by this Agreement a sum equal to sixty cents (.60) per hour for all hours worked, provided the Employer has received written authorization from the employee, and to remit said sum to the Union.

Section 2 <u>Authorization to Deduct</u> The signed authorization granting the Employer the authority to deduct the amount stated in Section 1 shall read as follows:

I, the undersigned, hereby verify that I am a member in good standing of Bricklayers and Allied Craftworkers, Local #18 Mo AFL-CIO, and I authorize you to withhold from my weekly pay check a sum equal to sixty cents (.60) per hour for all hours worked by me and to remit said amount to Local #18 MO. The undersigned further agrees and understands that this statement shall constitute and be a full and complete release for the aforesaid deduction from my weekly paycheck when paid to Local #18 MO. This authorization shall be irrevocable for a period of one (1) year from the date hereof or the termination date of the applicable collective bargaining agreement whichever first occurs and shall be renewable for successive one (1) year periods unless I give written notice to the Employer and the Union at least thirty (30) days preceding the expiration of each period of irrevocability.

------------------------------     ---------------------------------------------------
Date                               Signature

Section 3 <u>BAC I.U. Dues Check-off</u> The Employer agrees to deduct an amount of one percent (1%) of gross total package for each hour worked from the pay of each employee who is a union member and who executes a voluntary check-off authorization form for the Bricklayers & Allied Craftworkers. Deductions shall be in the amount and at the intervals specified on the check-off authorization form The Employer agrees to transmit BAC I.U. dues deductions to the International Union of Bricklayers and Allied Craftworkers. The transmittals shall occur on a MONTHLY basis and shall be accompanied by a list of the names of those employees for whom BAC I.U. dues deductions have been made and the amount deducted for each employee.

The deduction shall continue for the life of this Agreement for those employees who sign BAC I.U. dues authorization forms unless they are revoked individually and in writing.

11

## ARTICLE IX

## WORKING RULES

**Section 1** <u>Working Foreman</u> A working foreman shall be appointed on all jobs where eight or more union members are employed and his/her wages shall be one dollar fifty cents (1.50) per hour over and above the prevailing wage rate for journeymen setters.

**Section 2** <u>Prohibition of Piece Work</u> Employers shall not bargain or contract with each other to lay a designated number of feet of tile for the day's work, nor shall they bargain or contract that a mechanic do a certain piece of work in a designated time. This bargaining or contraction shall be regarded as piece work which is not within the contemplation of the parties signing this Agreement and will be deemed by the Union to be a material breach of the Agreement; in which event the Union may take any action it deems necessary not withstanding any other provision of the Agreement.

**Section 3** <u>No Limitation of Work</u> There shall be no limitation of the amount of work an employee shall perform during his working day or as to the use of machinery or tools. If an employee leaves early without permission and claims a full day worked, the employee will be docked for the time not worked and will be subject to disciplinary action by the contractor up to and including termination for cause.

**Section 4** <u>Orders and Instructions</u> All orders and instructions to employees, including discharging them, shall be given by the Employer or Superintendent, unless the working foreman is specifically instructed to do so.

**Section 5** <u>Proper Working Instructions</u> The Employer shall furnish to the Local #18 member proper working instructions, covering all work to be done on any and all jobs. On a complicated piece of work a setting plan shall accompany working instructions.

**Section 6** <u>Working Equipment</u> All employees must be supplied with the proper working equipment such as: Soaking tub, straight edges, float strips, mixing boxes, wheelbarrows, shovels, all cutting wheels, etc., to be furnished and delivered on the job by the Employer and it is further agreed that the Employer may have the option as to whether he/she will furnish power tools and excessive equipment, such as quarry tile cutters, large chisels, etc. However it is distinctly understood that the employee does not at any time have to furnish such equipment on jobs where the use of excessive tools such as large or small power tools, chisels, etc. are required to properly do the job. It being understood that all employees shall equip themselves with proper hand tools. That the employee **MUST INSPECT ALL EQUIPMENT DAILY AND MUST NOTIFY THE CONTRACTOR IMMEDIATELY IF ANY OF THE EQUIPMENT IS NOT IN PROPER SAFE CONDITION.**

12

**Section 7** <u>Epoxy Materials</u> all work with epoxies to be in strict accordance with manufacturer's written instructions and Local Health Department Regulations. The employer shall supply all necessary equipment such as gloves and floats. The Union shall reserve the right to remove all "Employees" from any apoxie or epoxy job where the above is not strictly adhered to. This shall include the right to notify the City and State Health Departments of flagrant violations of health hazards.

**Section 8** <u>Maintenance of Equipment</u> Employers understand that OSHA provides for certain responsibilities for the proper use of equipment and that they will provide such equipment in a manner consistent with safety rules and obligations. The employee agrees to exercise prudent responsibility for the equipment furnished them by the employer including the proper care, maintenance and cleaning. Failure to do so may result in disciplinary action up to and including dismissal. Such tools, equipment and supplies will be used only in performance of work for their employer. When an employer requests an employee to return company tools in his/her possession the Union will cooperate to expedite said return.

**Section 9** <u>Faulty Work</u> it is agreed that all materials and workmanship in connection with any installation shall be of such standards of quality so as not to destroy the true principles of the trade. In the event of a disagreement regarding the quality of a particular installation a committee composed of an equal number from the Union and Contractors shall inspect the work and render a decision which shall be final and binding upon all parties concerned. If the complaint is found to be justified and the employee is at fault, the member shall be required to repair the work on his or her own time. The employer shall supply the materials.

**Section 10** <u>Personal Appearance</u> The employer and union agree that the tile & marble trade is a service industry and personal appearance presents an important visual image to the customer. Qualified, professional union journeyworkers should present a neat, clean well-groomed appearance. Proper attire will be worn at all times. In the interest of safety and appearance the following general guidelines will be followed for the benefits of both the union and the employer:
  A. Clean, neat, well-groomed appearance
  B. No shorts
  C. No smoking in occupied residence or public place where prohibited
  D. Must wear safety equipment as required

**Section 11** <u>Maintenance of Skills</u> Because of the rapid development of new materials and methods of installation in the Tile & Marble Industry both management and union recognize the need for continuing education in order to stay current with the technical advances of the Industry. Therefore the journeyman level Tile Setter, Marble Setter, and Tile & Marble Finisher agree to participate in training classes and informational seminars as provided by the training school and the Tile & Marble Contractors.

13

Section 12 <u>Drug Testing</u> The Employer may require employees to submit to testing for alcohol or controlled substances to the extent and in the manner required by applicable law or by a project owner or in any reasonable manner for the purpose of promoting safety in the following circumstances; When there is reasonable cause to believe that an employee has used or is under the influence of such substances during working hours, when an employee has been involved in an accident involving personal injury or property damage on the job, or at random providing that an employer may not require random testing of any one employee more than twice in any calendar year. Positive test results indicating the presence of non-prescribed marijuana, cocaine, opiates, amphetamines or phencyclidine in any quantity or blood alcohol of 10/100th of one percent or more by weight or failure to submit to the drug and alcohol screen test may result in disciplinary action up to and including dismissal.

In order to enforce this policy it may be necessary to require appropriate biological specimens from both job applicants and/or current employees. When this activity is required all testing will be conducted by a company approved medical testing laboratory that has been licensed by the state. The company will bear all cost for drug and alcohol testing of employees.

ARTICLE X

<u>EMPLOYER - CONTRACTOR</u>

Section 1 <u>Determination of Status of Contractor</u> a key officer employed by a company or corporation and a member of Local #18 MO may elect to pay his/her check off dues (Article VIII, Section 1) plus a flat fee of forty dollars ($40) per month with no benefit package. This will entitle that person to work with the tools. If however the company or corporation hires three or more members of Local #18 MO he/she must lay down the tools.

If he/she elects to pay into the benefit package he/she will pay a minimum of one hundred twenty (120) hours per month. He/she will then be allowed to work with the tools.

If he/she carries a Union Card he/she will be allowed to attend union meetings but by IU law will be restricted from holding office or having an individual vote.

Section 2 <u>Surety Bond</u> Any new contractor becoming a party to this Agreement after its effective date shall secure and maintain a surety bond in the minimum amount of ten thousand dollars ($10,000) to guarantee payment of all wages, fringes and contributions provided for herein and shall furnish to the union evidence of the procurement and maintenance of bond in such amount for a period of one (1) year. Any contractor failing to pay wages or fringe benefits at the proper time provided herein will secure and maintain such a surety bond.

14

Section 3 Unemployment Compensation Insurance By the execution of this Agreement the Employer hereby agrees that he/she shall be covered under the laws of the State of Missouri relating to unemployment compensation insurance and the Employer shall provide coverage for all employees covered by this Agreement. The Employer further agrees to post account numbers indicating such coverage with the Joint Arbitration Board.

Section 4 Worker's Compensation Insurance All employees employed by an Employer under this Agreement are to be protected by Worker's Compensation Insurance as required under the laws of the State in which said employees are employed. The Employer shall furnish to the Joint Arbitration Board a certificate from the insurance company stating that such insurance has been provided. This certificate shall specify the date when such compensation insurance expires. The Employer agrees that such compensation insurance shall be maintained by him/her throughout the life of this Agreement. If an Employer fails to obtain Worker's Compensation Insurance the Union is obligated to take economic action against said employer including but not limited to removal of employees from the job, strike, picket or any other lawful action. Before any work is undertaken by employees the above-mentioned certificate must be on file with the Joint Arbitration Board.

The policies are not cancelable or subject to reduction in coverage until ten (10) days after receipt by the insured and the Union of written notice as evidenced by return receipt.

Section 5 Uniformity of Operation Any Employer operating in this jurisdiction shall work as provided in this Agreement and under which all other Employers, parties hereto now operate with this jurisdiction.

Section 6 Most Favored Nation Clause The Union agrees that if it should enter into an agreement which provides for terms or conditions of employment which are more favorable than those contained in this Agreement for specific projects, particular segments of the marble, ceramic or quarry tile market or certain geographic areas, those same terms and conditions of employment will be made available to all Employers on the specified projects, particular segments of the market or in those geographic areas covered.

15

## ARTICLE XI

## NO STRIKE/NO LOCKOUT
## AND
## ARBITRATION

Section 1 - There shall be no strikes or lockouts over a dispute concerning an alleged breach of this Agreement during its term until the grievance procedures of this Article have been exhausted and then only in the event a party fails or refuses to abide by a final decision. This Article shall not apply in those cases where an Employer fails or refuses to make in whole or in part any payments required under this Agreement including all wages, local union fringe benefits or other fund contributions that have been established through bonafide collective bargaining.

Section 2 - All questions or differences arising between the parties to this Agreement relating to its interpretation or enforcement or the subject matter thereof shall be referred to a Joint Arbitration Board for determination or settlement. Pending a decision of the Joint Arbitration Board the status quo shall exist. If either party refuses to abide by the Award then the injured party will be free to take whatever economic action it deems necessary.

Section 3 Joint Arbitration Board   This Joint Arbitration Board shall be composed of ten (10) members. Five (5) to be employers, signers of this Agreement and five (5) to be members of Local #18 MO. The employer members shall be selected by the employers at a meeting of their organization and the union members to be elected by their union in the regular manner. Any decisions made by a majority vote of this committee shall be binding upon the parties signatory to this Agreement.

Grievance Procedures are as follows:

No grievance shall be recognized unless it is called to the attention of the employer by the union or to the attention of the union by the employer within five (5) days after the alleged violation is committed or discovered.

Step 1: The employee and the employer try to settle the grievance. This attempt to settle shall be done within five (5) days excluding Saturday, Sunday and legal holiday.

Step 2: If step one does not settle the grievance it shall be referred to the Business Manager. The manager shall than meet with the employer and the employee and attempt to settle the grievance. They shall meet within three (3) days excluding Saturday, Sunday and legal holidays.

16

Step 3: If step two does not settle the grievance it shall be referred to the Joint Arbitration Board within three (3) days excluding Saturday, Sunday and legal holidays. The Joint Arbitration Board shall have five (5) days to reach a decision.

Step 4: If a decision is not reached the Joint Arbitration Board shall select an impartial arbitrator to review with the board all evidence submitted relating to the grievance and then cast the deciding vote. If the Joint Arbitration Board cannot agree on an arbitrator the matter then is referred to the American Arbitration Association.

All expenses incurred by a special arbitration shall be borne jointly by both parties to this Agreement, (Union and Contractor Association). Any decision reached during the grievance procedures shall be final and binding on all parties but shall not be precedent setting.

## ARTICLE XII

### PRESERVATION OF WORK

Section 1 - in order to protect and preserve for the employees covered by this Agreement all work heretofore performed by them and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project under its own name or under the name of another, as a corporation, company, partnership, or any other business entity including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

Section 2 - All charges of violations of Section 1 of this Article shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article XI of this Agreement. As a remedy for violations of this Section the arbitrator (or arbitration body ) provided for in Article XI is empowered at the request of the Union, to require an Employer to 1) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations and 2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations, including such interest as may be prescribed by the trustees or by law. Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this Section, nor does it make the same or other remedies unavailable to the Union for violations of other sections or articles of this Agreement.

17

Section 3 - If, as a result of violations of this Article, it is necessary for the Union and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with Section 2 above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or the fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

## ARTICLE XIII

### WAGES AND BENEFITS
### TILE & MARBLE SETTERS
### RATES OF PAY, WELFARE, PENSIONS

Section 1 <u>Tile & Marble Setters Rates of Pay</u>

(a) Effective May 1, 2004 through April 30, 2005 total wages, including fringe-benefits increases, will be $34.77 the breakdown would be as follows: May 1, 2004 - $1.25 per hour increase, .67 cents increase hourly wage, .45 cents increase Health & Welfare, .12 cents increase Local pension and .01 cent increase Local Apprentice Fund.  Wages as of May 1, 2004 - $25.27 per hour.

(b) Effective May 1, 2005 - $1.20 per hour wage increase.  Said increase to be in wages or fringe benefits at the Union's option.

(c) Effective May 1, 2006 - $1.15 per hour wage increase.  Said increase to be in wages or fringe benefits at the Union's option.

(d) Whenever the Union's option is exercised herein, the Union shall notify the Employer of the breakdown between wages and fringe benefits no later than thirty (30) days preceding the effective date.

Section 2 <u>Health & Welfare</u> The Employer shall contribute the amount of $4.60 per hour for each hour worked by all Tile & Marble Setter members of Local #18 MO including all apprentices per Section 5 of Article XIII as of May 1, 2004 into the Bricklayers & Allied Craftworkers International Health Fund.  All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due.

Section 3 <u>Local Pension Fund Tile & Marble Setter</u> The Employer shall make contributions in the amount of $2.93 per hour for each hour worked by all Tile & Marble Setter members of Local # 18 Mo including all apprentices per Section 5 of Article XIII into the Ceramic Tile & Marble Masons Pension Fund as of May 1, 2004.  All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due.  Pension will be 10% of base wages on future increases rounded to nearest cent.

18

Section 4 <u>Bricklayers & Trowel Trades International Pension Fund</u> The Employer shall contribute the amount of $1.50 per hour for each hour worked by all Tile & Marble Setters as of May 1, 2004 including all apprentices per Section 5 of Article XIII into the Bricklayers & Trowel Trades International Pension Fund.

Section 5 <u>Tile & Marble Setter Apprentice Program</u>
The rates of pay for Setter Apprentice is as follows:
a) 1st three months - 50% of journeyman wages (without Health & Welfare or Pension
                 Contributions)
b) 2nd three months - 55% of journeyman wages (with Health & Welfare and no
                 Pension Contributions)
c) 2nd six months   - 65% of journeyman wages (with Health & Welfare and
                 Pension Contributions)
d) 3rd six months   - 70% of journeyman wage
e) 4th six months   - 75% of journeyman wage
f) 5th six months   - 85% of journeyman wage
g) 6th six months   - 90% of journeyman wage

In all of the above categories all International & Local dues are to be withheld and all contributions to the Industry Advancement, International Masonry Institute and Apprentice Training Fund shall be paid per the Collective Bargaining Agreement.

**WAGES AND BENEFITS**
**TILE & MARBLE FINISHERS**
**RATES OF PAY, WELFARE, PENSIONS**

Section 6 <u>Tile & Marble Finishers Rates of Pay</u>

a) Effective May 1, 2004 through April 30, 2005 total wages (including fringe benefits increases) will be $31.68. The breakdown would be as follows: May 1, 2004 $1.06 per hour increase .50 cents increase hourly wage, .45 cents increase Health & Welfare .10 cents increase Local pension .01 cent increase Local Apprentice Fund.  Wages as of May 1, 2004 - $22.76 per hour.

b) Effective May 1, 2005 $1.02 per hour wage increase.  Said increase to be in wages or fringe benefits at the Union's option.

c) Effective May 1, 2006 $.98 per hour wage increase.  Said increase to be in wages or fringe benefits at the Union's option.

d) Whenever the Union's option is exercised herein, the Union shall notify the Employer of the breakdown between wages and fringe benefits no later than thirty (30) days preceding the effective date.

19

Section 7 <u>Health & Welfare</u> The Employer shall contribute the amount of $4.60 per hour for each hour worked by all Tile & Marble Finisher members of Local #18 MO including all apprentices per Section 11 of Article XIII as of May 1, 2004 into the Bricklayers & Allied Craftworkers International Health Fund. All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due.

Section 8 <u>Local Pension Fund Tile & Marble Finisher</u> The Employer shall make contributions in the amount of $3.05 per hour for each hour worked by all Tile & Marble Finishers members of Local #18 MO including all apprentices per Section 11 of Article XIII into the Tile & Marble Finishers Pension Fund as of May 1, 2004. All monies due to said Fund shall be paid on or before the 15th day of the month following the month for which said contributions are due.

Section 9 <u>Bricklayers & Trowel Trades International Pension Fund</u> The Employer shall contribute the amount of .80 cents per hour for each hour worked by all Tile & Marble Finishers as of May 1, 2004 including all apprentices per section 11 of Article XIII into the Bricklayers & Trowel Trades International Pension Fund.

Section 10 <u>Grandfather Clause</u> protecting all finishers who were members before August 1, 1989. The "Grandfather" Finisher will get a percentage raise based on all new negotiations.

Section 11a <u>Finisher Apprentice</u>. All new Finishers will go into an apprentice program. First year the apprentice will attend class. The remaining two years will be on the job training -no classes. At the end of three (3) years Finishers wages will be 85% of Setter's wages.

Section 11b <u>The Finisher Apprentice Program</u>: The rates of pay for the Finisher's Apprentice shall start at 50% of Journeyman Setters wages.
1st - 3 months - 50%  No Health & Welfare or Pension
2nd - 3 months - 55% with Health & Welfare no Pension
2nd - 6 months - 60% with full Health & Welfare & Pension
3rd - 6 months - 65% with full Health & Welfare & Pension
4th - 6 months - 70% with full Health & Welfare & Pension
5th - 6 months - 75% with full Health & Welfare & Pension
6th - 6 months - 80% with full Health & Welfare & Pension

Section 12 <u>Apprentice Fund</u> The Employer shall contribute the amount of twenty-five (.25) cents for each hour worked by each employee covered by this Agreement to the Tile & Marble Apprentice Fund. Contribution increases will be 1% of future wage increases rounded to the nearest cent. In the event it is determined by the Joint Apprentice Committee that a greater amount is required to effectively operate the apprentice program, the Employer will increase the contribution to the Apprenticeship Fund in the amount established by the Joint Apprentice Committee. Such increase in contribution shall come from the Union allocation of compensation increase provided for in Sections 1 and 6 of Article XIII.

20

Section 12A <u>Apprentices</u> In order to train sufficient skilled setters and finishers for the industry, the necessity for employment of apprentices and/or improver apprentices is recognized and encouraged by parties to this agreement. It is agreed that the apprenticeship standards adopted by the local Joint Apprentice Committee are incorporated herein by reference as if fully set out.

Section 13 <u>Industry Advancement</u> All Contractors/employers signatory to this Agreement will contribute two (.02) cents per hour for each working member of Local #18 MO employed by the contractor/employer to a fund for industry advancement. All contractors signatory to this Agreement will be considered members in good standing of the Tile & Marble Contractors Association of Greater St. Louis and will be able to hold office and vote.

Section 14 <u>International Masonry Institute</u> the parties to this Agreement recognize the need for effective apprenticeship and training which must be met if the industry is to grow and prosper. The parties to this Agreement believe that the IMI is the most effective and efficient instrument for meeting these needs because it offers the greatest possibility of integrating activities in this program area in an effective manner of coordinating through a single regional/international system. With this principle in mind, the parties agree as follows: effective May 1, 2004 the contribution to the International Masonry Institute shall be twenty (.20) cents per hour for each Tile & Marble Setter and twenty (.20) cents per hour for each Tile & Marble Finisher for which a covered employee receives pay.

Section 15 <u>Wage Information</u> all members of Local #18 MO shall be paid at least once a week. Friday shall be payday and that pay shall include all time up to the previous Tuesday night. Pay shall be in law money of the United States. They shall be paid not later than 4:30 PM on local work. Employee wage payment will show amount of gross pay and itemized deductions, together with dates of the pay period covered, the name of the Company, the name of the employee and total number of both regular and overtime hours worked and upon request, copies will be supplied to the funds and/or the Union office by the Employer.

Section 16 - If the contractor/employer elects to mail the pay; and should any employee not receive his/her pay at his/her residence on the Friday payday, the employer will be charged "waiting time". The limit to be two (2) days pay which will begin at 8:am and end at 4:30 PM on Saturday and Sunday. No claim will be allowed if the postmark on the letter containing the pay is Thursday PM before payday. If however, the employee is required to pick up his/her check from the shop on Saturday he/she will be paid an additional two (2) hours pay at base pay.

Section 17 -<u>Federal Wage Control</u> If Federal Wage Controls are imposed for the Tile & Marble section of the construction industry or the construction industry in general this local union shall therefore receive in addition to the wages and fringe benefit fund contributions provided for in this Agreement any amount previously eliminated by said Controls if wage controls were in effect less than one (1) year. If wage control is in effect for more than one (1) year then any wage increase during that one-year period would be waived. However, if that one (1) year period laps two raises, only the first raise would be waived.

21

## ARTICLE XIV
## NO DISCRIMINATION AND GENERAL UNDERSTANDING

**Section 1** <u>No Discrimination</u> The Employer(s) and the Union mutually recognize the need for implementing equal opportunity to all qualified employees and applicants for employment without regard to race, color, creed, sex, age or national origin. There shall be no discrimination against any employee because of race, color, religion, sex, national origin, age, handicap, union membership, union activity or status as a disabled veteran, or a veteran of the Vietnam Era except where age is a bonafide occupational qualification or handicap is a bonafide occupational disqualification.

**Section 2** <u>Delinquencies</u> The Employer further agrees to keep true and accurate records of his/her payroll and expenses paid to his/her employees covered by this Agreement and the employer shall make them accessible for audit by the Trustees of any existing Trust Fund or their appointee or disinterested representatives. The cost of such representative shall be paid by the Trust Fund to which contributions are due. If such audit by the disinterested party discloses errors in the bookkeeping of the employer then a cost of the audit shall be paid by the employer being investigated.

Upon notice to the Union from the Trustees of a benefit fund to which the employer is obligated to make contributions under this Agreement that the employer is delinquent in making contributions to such benefit fund, the Union shall be entitled to take all recourse, including strike action for collection of the delinquency and to protect against its reoccurrence any other provision of this Agreement notwithstanding.

Notice from the Trustees to the Union of an employer's delinquency status shall be conclusive and reliance thereon by the Union shall not be accountable. Neither the issue of delinquency in contributions nor the extent thereof nor action taken by the Union to compel collection shall be subject to the grievance and arbitration provisions of this Agreement.

In the event the Employer is delinquent in his/her contributions to the Funds and it becomes necessary for the Trustees of said funds to employ an attorney for the purpose of collecting delinquencies and any penalties, the Employer shall be responsible for and required to pay any reasonable attorney's fees and other costs incurred in the collection of said monies. In the further event the Employer is delinquent in his/her contributions to said Funds, the Union shall deem such delinquency to be a material breach of the Agreement and shall have the right to take economic action against said Employer including, but not limited to removal of the employees from the job, strike, picket, forfeiture of Surety Bond or institution of Surety Bond, (Article X, Section 2) or any other lawful economic action

**Section 3** In the event the Joint Arbitration Board approves a different and more efficient method of processing the check-off and payments of contributions such shall be implemented and shall replace all existing methods in accordance with said Board's instructions.

22

Section 4 <u>Traveling Contractors</u> When the employer has any work specified in Article III of this Agreement to be performed outside of the area covered by an agreement with another affiliate of the International Union of Bricklayers and Allied Craftworkers, the employer agrees to abide by the full terms and conditions of the agreement in effect in the job site area.  Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Article XIII of this Agreement but in no case less than the established minimum wage scale of the local agreement covering the territory in which such work is being performed plus all contributions specified in the job site Local Agreement.  The employer shall, in all other matters be governed by the provisions established in the job site local.   Where there is no local agreement covering the work specified in Article III of this Agreement, the full terms and conditions of this Agreement shall apply.

Section 5 <u>Out-Of-Town Contractors</u> Securing work in the jurisdiction of Local #18 MO may send one key person to such work, (one Tile Setter, or one Marble Mason); in addition, the out-of-town contractor may also send one (1) key person as a Finisher.  If additional Tile Setters, Marble Masons or Finishers are needed for the job they must come from Local #18 MO.  If Local #18 MO has no members available for the job, then the out-of-town contractors may bring in his/her employees from his/her home local.  Local #18 MO must be notified forty-eight (48) hours in advance of start of job.

23

## ARTICLE XV

## SEVERABILITY

Section 1 <u>Validity of Agreement</u> In the event any Federal or State Law is held to invalidate any Article, Section, Clause, or Provision of this Agreement, said Article, Section, Clause or Provision shall be stricken from the Agreement and the balance and remainder of this Agreement shall remain in full force and effect.

The parties shall meet forthwith for the purpose of negotiating by amendment or otherwise any Article, Section, Clause or Provision which may be held to be illegal pursuant to a Federal or State law by a final court decision interpreting such law.

<u>AGREEMENT EFFECTIVE MAY 1, 2004 through APRIL 30, 2007</u>

TILE & MARBLE
CONTRACTORS ASSOCIATION
BAC LOCAL #18 MO                    ST. LOUIS & VICINITY

**UNION**                                      **EMPLOYER**
Name                    Date              Name                        Date

*Michael Burns*        5/27/04          *Scott J Faron*            5-13-04
*James Finnius*        5/27/04          *Dan Roth*                 5-13-04
*Jim Muell*            5/27/04          *[signature]*              5-24-04
*Mike Klindworth*      5/27/04          *Joe Baldin*               5-26-04
*Brad Mills*           5/27/04          *Steve Wein*               5-26-04

Name of Company: _____

Signature and Title: _____

Company Address: _____

Telephone: _____

Date: _____

23

ARTICLE XV

SEVERABILITY

Section 1 Validity of Agreement In the event any Federal or State Law is held to invalidate any Article, Section, Clause, or Provision of this Agreement, said Article, Section, Clause or Provision shall be stricken from the Agreement and the balance and remainder of this Agreement shall remain in full force and effect.

The parties shall meet forthwith for the purpose of negotiating by amendment or otherwise any Article, Section, Clause or Provision which may be held to be illegal pursuant to a Federal or State law by a final court decision interpreting such law.

AGREEMENT EFFECTIVE MAY 1, 2004 through APRIL 30, 2007

TILE & MARBLE
CONTRACTORS ASSOCIATION
ST. LOUIS & VICINITY

BAC LOCAL #18 MO

UNION                                    EMPLOYER
Name                        Date         Name                        Date

_James O. Hennis_  _5/26/04_    _____  _____
BUSINESS MANAGER

_____  _____    _____  _____

_____  _____    _____  _____

_____  _____    _____  _____

Name of Company: _Mainini Tile_

✱ Signature and Title: _Gary Mainini_ (PRES.)

Company Address: _16624 Chesterfield Airport Road_

Telephone: _(636) 532-1113_

Date: _5-26-04_

# INDEX

Apprentice------------------------------------20
Apprentice Fund-------------------------------19
Arbitration-----------------------------------15
Authorization to Deduct-----------------------10
Delinquencies---------------------------------21
Determination of Contractor-------------------13
Drug Testing----------------------------------13
Dues Check-Off--------------------------------10
Duration--------------------------------------3
Epoxy Materials-------------------------------12
Equipment-------------------------------------11
Faulty----------------------------------------12
Favored Nation Clause-------------------------14
Federal Wage Control--------------------------20
Finishers Territorial Jurisdiction------------4
Grandfather Clause----------------------------19
Health & Welfare Setters----------------------17
Health & Welfare Finishers--------------------19
Hiring Preference-----------------------------9
Holidays--------------------------------------7
Hours-----------------------------------------6
IU Pension Setters----------------------------18
IU Pension Finishers--------------------------19
Industry Advancement--------------------------20
International Masonry Institute----------------20
Limitation of Work----------------------------11
Local Pension Setters-------------------------7
Local Pension Fitters-------------------------19
Maintenance of Skills-------------------------12
Maintenance of Equipment----------------------12
Management Recognition------------------------3
Marble Setter Work----------------------------5
Mileage Reimbursement-------------------------8
No Discrimination & General Understanding-----21

Occupied Non-Residential----------------------7
Orders and Working Instructions---------------11
Out-of-town Meal Allowance--------------------8
Out-of-Town Contractors-----------------------22
Out-of-Town Travel Allowance------------------9
Out-of-Town Motel Allowance-------------------8
Overtime--------------------------------------6
Parking---------------------------------------9
Personal Appearance---------------------------12
Piece Work------------------------------------11
Preservation of Work--------------------------16
Regular Work Hours----------------------------6
Saturday Make-up Day--------------------------6
Scope of Agreement----------------------------4
Setters Territorial Jurisdiction--------------4
Shift Work------------------------------------7
Show-up Time----------------------------------7
Sub-Contracting-------------------------------9
Surety Bond-----------------------------------13
Teamwork--------------------------------------6
Tile & Marble Finishers Apprentice Program----19
Tile & Marble Finisher Work-------------------6
Tile & Marble Finisher Wages & Benefits-------18
Tile & Marble Setter Apprentice Program-------18
Tile & Marble Setter Wages & Benefits---------17
Tile Setter Work------------------------------5
Traveling Contractors-------------------------22
Unemployment Compensation Insurance-----------14
Uniformity of Operation-----------------------14
Union Recognition-----------------------------3
Union Security--------------------------------4
Validity of Agreement-------------------------23
Wage Information------------------------------20
Workers Compensation Insurance----------------14
Working Foreman-------------------------------11